# COURT OF APPEALS.

## June 13, 1911.

# THE PEOPLE v. JOHN KINNEY.

(202 N. Y. Rep. 389.)

(1.) MURDER—ERRONEOUS ADMISSION OF EVIDENCE TENDING TO SHOW THAT DEFENDANT HAD, AFTER THE HOMICIDE, MONEY PREVIOUSLY IN THE POSSESSION OF DECEASED.

Where the alleged motive for a murder was robbery, it is erroneous, upon the trial of the defendant indicted for such crime, to permit a witness to testify as to a conversation with the deceased the day before the homicide, at which the defendant was not present, tending to show that the deceased then had money in his possession.

(2.) SAME.

Where a witness had testified that nearly a month before the homicide he paid to the deceased certain bills which corresponded with those possessed by the defendant after the homicide, and had been subjected to a cross-examination in an attempt to impeach his memory as to the denomination of the bills and, therefore, the reliability of his testimony, it was error for the court, upon the redirect examination, to allow in evidence, in corroboration of such witness, an affidavit made by him several days after the homicide, in proceedings in no wise connected with the defendant, stating that he had made to the deceased the payment of bills detailed in the direct examination.

(3.) SAME—POSSESSION OF KEYS OF MURDERED MAN.

Where the murder with which a defendant is charged was not discovered until several days thereafter and it appeared that the deceased lived alone in a sparsely settled locality; that he was waylaid and shot as he was coming out of his house; that, thereafter, the murderer dragged the dead body back into the house, procured the m ney which furnished the motive for the crime and locked the house :d went away, it is error to receive in evidence a bunch of keys. e of which unlocked doors of the house occupied by the deceased .

time of the homicide, and to permit a deputy sheriff to testify that, on the day of defendant's arrest and a few minutes after defendant had visited a toilet room, open to the public and never locked, he found such bunch of keys stuck between a pipe and the wall in plain sight; such facts did not constitute sufficient evidence to connect the defendant with their possession.

(4.) SAME—CONFESSIONS.

Where part of the evidence, introduced against a defendant charged with murder, consisted of alleged confessions, the defendant was entitled to a preliminary examination of the witness by whom the confessions were to be proved, for the purpose of showing that improper inducements were used to procure such confessions; but the limit to which such a preliminary examination might be pursued was within the sound judgment and discretion of the trial judge, and where defendant's counsel had conducted such an examination to some extent without making any substantial headway and without any prospect of success the trial judge was justified in curtailing the examination. Nor was there any error upon the facts proven, in the failure of the trial judge to submit to the jury the question whether the alleged confessions were induced by improper methods.

APPEAL from a judgment of the Supreme Court, rendered June 20, 1910, at a Trial Term for the county of Clinton, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Patrick J. Tierney* and *David H. Agnew,* for appellant. It was error to admit evidence relating to payment of money by Trudeau to deceased. (Matter of Hesdra, 119 N. Y. 615; Vilas Bank v. Newton, 25 App. Div. 62; Gilbert v. Sage, 57 N. Y. 639; Deckert v. M. E. L. Co., 39 App. Div. 490; Train v. Taylor, 51 Hun, 215; Schattman v. Am. Credit Co., 34 App. Div. 392; Anderson v. R., W. & O. R. R. Co., 54 N. Y. 334.) It was error to admit in evidence the statements of deceased not made in the presence of defendant. ( Messner v.

People, 45 N. Y. 1.) The defendant was not permitted a full and complete examination to show that the confession to the chief of police was involuntary. (People v. Fox, 121 N. Y. 449; People v. Brasch, 193 N. Y. 53; People v. Rogers, 192 N. Y. 331.) The defendant did not have a fair and impartial trial because of the remarks and conduct of the presiding judge. (Bolte v. T. A. R. R. Co., 38 App. Div. 234; People v. Fiori, 123 App. Div. 174; People v. Hill, 37 App. Div. 327; People v. Brow, 90 Hun, 509; People v. Conrow, 200 N. Y. 356; People v. Ford, 200 N. Y. 217; People v. Corey, 157 N. Y. 352; People v. Fielding, 158 N. Y. 542; People v. Wood, 126 N. Y. 249, 269; People v. Gangi, 140 App. Div. 929.)

*Arthur S. Hogue,* District Attorney, for respondent. It was proper to corroborate Trudeau by his own affidavit. (Matter of Hesdra, 119 N. Y. 615; Robb v. Hackley, 23 Wend. 50; Vilas Nat. Bank v. Newton, 25 App. Div. 68; Decket v. M. E. Light Co., 39 App. Div. 490; Gilbert v. Sage, 57 N. Y. 639; Baker v. B. & S. A. R. Co., 29 N. Y. Supp. 40.) The keys were properly received in evidence. (People v. Hill, 198 N. Y. 64; People v. Del Vermo, 194 N. Y. 470.) It is not legal error for a trial judge to indicate his opinion; only where there is evidence of marked bias, or where the balance of proof is slight will the appellate court interfere. (People v. Fisher, 136 N. Y. 57; People v. O'Brien, 119 N. Y. Supp. 788; Cross v. City of Syracuse, 200 N. Y. 393.)

HISCOCK, J.:

The appellant has been convicted of murder in the first degree for the alleged killing of one Bouvia at a small hamlet called Jericho, in the county of Clinton, December 29, 1909.

The theory of the prosecution, and in accordance with which the appellant must have been found guilty, was and is that the latter arose very early on the morning of the day in question,

went some distance to the house where the deceased lived alone in a sparsely-settled locality, laid in wait and shot him as he came out of his house, thereafter dragged the dead body back into the house, procured the money which furnished the motive for the crime, locked the house and went away. The crime was not discovered until three or four days thereafter, when the appellant was promptly charged therewith and arrested.

There were no eye-witnesses of the crime, but the testimony offered by the People consisted of alleged confessions and of various items of circumstantial evidence. The legitimate evidence which was offered and received was quite sufficient to sustain the judgment of conviction if the trial had been fairly conducted. We find, however, that substantial errors were committed of a nature calculated seriously to affect the rights of the appellant, and which, therefore, we are unwilling to disregard. Some of the alleged errors are so inconsequential and so unlikely to arise on another trial that I shall not discuss them, referring simply to those which are more important and which might be repeated.

As I have said, the alleged motive for the murder was that of robbery, and it, therefore, became important for the People to show that the deceased had money, that the appellant knew of it, and, if possible, to identify some of the bills found on appellant after the murder with those earlier in the possession of the deceased.

One Spinks was allowed to testify to a conversation occurring with the deceased on the day before the homicide, when the appellant was not present, tending to show that the former had money in his possession. Of course, this evidence was absolutely incompetent, and while the presence of other testimony tending to show the same fact might be made an excuse for overlooking this error if it were the only one, such situation made it all the less excusable to crowd in objectionable testimony.

One Trudeau, called by the People, testified that nearly a month before the homicide he paid to the deceased certain bills which corresponded with those possessed by appellant after the homicide. This evidence manifestly was of substantial importance. The witness was subjected to an ordinary cross-examination in the attempt to impeach his memory as to the denomination of the bills, and, therefore, the reliability of his testimony. Thereupon, on the re-direct examination, the court allowed in evidence in corroboration of him an affidavit made by him several days after the homicide in proceedings in no wise connected with appellant that he had made to the deceased the payment of bills detailed in the direct examination. It is sufficient to state somewhat dogmatically that this evidence was utterly incompetent for this is so baldly the law that there is no chance for debate or discussion. It is doubtless true that there are some very exceptional circumstances under which the evidence of a witness may be corroborated and relieved from suspicion by proving something which he had said or done on a prior occasion. But those few cases are so wholly dissimilar from this one that there is no opportunity to find any similarity which would make them a precedent or authority for what was done on this trial.

On the day of appellant's arrest and some considerable time thereafter he was taken to the office of the chief of police in the courthouse. There was in the building a toilet room which was never locked, which was used by all the people occupying the building and was also accessible to so much of the public as frequented the building, and this must have included a large number of people inasmuch as there were various court rooms therein. A deputy sheriff testified that a few moments after the appellant had visited this room he found stuck between a pipe and the wall in plain sight a bunch of keys. A bunch of keys more or less satisfactorily identified as the one thus found, was produced upon the trial and received in evidence over the s···

pellant's objection.  It was testified in connection therewith
that three of the six keys thus found unlocked doors in the house
occupied by the deceased at the time of the homicide, some of
them at least outside doors.  There was not the slightest bit of
proof to connect appellant with the possession of the keys except
the mere fact that they had been found in a public toilet room a
short time after he had been there.  I regard this evidence as one
of the most damning pieces of testimony found in the People's
case, and if it was incompetent its admission was certainly a
grievous error.

As I said at the commencement, the body of the deceased
after he had been presumably killed on the outside, was dragged
back into the house and the doors locked.  The presence on this
bunch of three keys out of six which fitted doors in the small
house where deceased lived established an apparent relationship
between the keys and the house too unusual to be readily over-
looked as a mere coincidence.  If then the jury found, as they
were permitted to, that appellant had these keys in his possession
after the homicide, they could scarcely fail to draw the plain
conclusion that he it was who had locked up the
doors after the deceased had been murdered and dragged back
into the house.  After this there would be little need for the
People to go further in their line of proof.  Scant room was
left for the play of any uncertainty or speculation with the in-
quiry who it was that was busily engaged around the scene of
the murder immediately after the victim had been killed.  So
then we come to the question whether this evidence was made
competent.  Clearly it was not.  We have the sole facts that the
appellant had been in a public and much-frequented toilet room,
and that thereafter a bunch of keys was found there
in plain sight where any one might have placed them.  For all
that is disclosed they may have been there for three or four days
before the appellant was arrested.  Not only might some one
else have placed them there but the appellant during the day had

had opportunities for getting rid of the keys if they were
actually in his possession. I do not lose sight of the fact that a
brutal murder had been committed apparently from the mean-
est motives, and that in the interest of justice the People
should be allowed to introduce any evidence which legally
served to fix the identity of the murderer. If there had been
anything which logically and fairly tended to connect the ap-
pellant with the deposit of these keys where they were found,
it would have been the duty of the trial court to receive them
and of this court to affirm such action. It was not
indispensable to show by direct testimony their possession by
him before they were found or to establish conclusively that they
were not present in the toilet room the very last moment be-
fore he went in there. But as has been said on the evidence as
now presented the keys may have been where found
for three or four days before appellant went to the toilet room.
Such a condition did not justify their admission in evidence.
Certainly if there was no sufficient connecting testi-
mony of any other kind, there should have been presented some
evidence which related to such a time before as well as after
appellant went there as would reasonably justify the conclusion
and inference that they were not placed where found by some-
one else.

Neither of the cases cited by the district attorney to sustain
the admission of this evidence does so. In People v. Hill (198
N. Y. 64, 24 N. Y. Crim. 358) the court received in evidence
some keys found in a remote spot where the defendant
was believed, and by other evidence shown, to have lain in wait
for his victim. They had on them a tag bearing the defendant's
name and this was considered by some of the members of the
court to constitute some evidence of their ownership.
But even these circumstances we did not pass on the com-
petency of the evidence, holding that, even though incompe-
tent, it was too inconsequential under all of the cir-

cumstances of that case to require a reversal of the judgment.

In People v. Del Vermo (192 N. Y. 470) a knife was received which had been found in an out of the way place where defendant had been. In that case, however, there was evidence outside of the discovery of the knife at the place in question which authorized the jury to find a connection between it and the defendant. Even then there was strong dissent from the prevailing opinion as to the competency of the evidence.

An important item of evidence introduced against the appellant consisted of alleged confessions, and it is vigorously claimed by his counsel that errors were committed by the trial court in refusing to permit him to conduct a preliminary examination of the witness by whom some of these confessions were proved, for the purpose of showing that improper inducements were used to procure them, and also that the question whether some of the confessions were so improperly induced should have been submitted to the jury. While the manner in which the trial judge treated this subject and the appellant's counsel in connection therewith constituted one of those unfortunate incidents hereafter discussed it seems proper to say that in our opinion no strictly legal error was committed in the rulings of the court on this evidence. There is no foundation for the assertion that the question whether appellant's alleged confessions to the chief of police were induced by improper methods should have been passed on by the jury. In the first place there was no request for any such disposition as this, and in the second place I find no evidence which made it proper for the trial court to submit any such question. The preliminary examination which appellant's counsel desired to conduct for the purpose of showing that appellant in making the alleged confessions was influenced by fear commenced with a period antedating by many hours the time when they

are alleged to have been made. He was allowed to pursue this examination to some extent before he was stopped. The limit to which such a preliminary examination may be pursued must of course be determined in some measure by the sound judgment and discretion of the trial judge. I cannot see that the counsel had made any substantial headway in attaining the purpose of his preliminary examination at the time he was stopped by the trial judge, and in the absence of some assurances or prospects of success the latter undoubtedly had a right to curtail the examination. (People v. Brasch, 193 N. Y. 46, 23 N. Y. Crim. 69.)

I come now to that feature of the trial already adverted to which very substantially influences us in awarding a new trial and which need be referred to only in a brief manner. The judge before whom the trial was conducted has since died, and we may take notice of what is generally known that already at the time when the trial occurred his health had become seriously impaired. In his anxiety conscientiously to fulfill his duties he undertook in the trial of this case burdens which it was beyond his strength to carry. Under these circumstances, in ruling on evidence, in giving directions to the counsel for the accused and in charging the jury he did inadvertently and unintentionally do those things which, probably negligible if limited to one or two instances, in the aggregate were calculated to create such a prevailing atmosphere of apparent prejudice towards the appellant's case that the jury could scarcely escape its substantial influence. However strong the People's case may be regarded, the accused is entitled to have the question of his guilt or innocence determined by the jury unaffected by any improper thoughts or considerations of importance. Because of the features now being pointed out, in connection with the admission of improper evidence, we think this opportunity was not afforded to this appellant, and that, therefore, a new trial must be granted.

Haight, J.:

I concur in the opinion of Hiscock, J., except as to the paragraph pertaining to the finding of the keys. As to that I dissent upon the ground that the evidence taken of the finding of the keys and of their fitting the locks on the doors of the decedent's house was competent. The evidence so taken, in connection with the other facts and circumstances developed in the case, was sufficient to be considered by the jury as forming one of the circumstances or links in the chain of evidence, even though the evidence connecting the defendant with the possession of the keys may be slight.

Cullen, Ch. J., Willard Bartlett, Chase and Collin, JJ., concur with Hiscock, J.; Haight, J., concurs in result in memorandum, with whom Werner, J., concurs.

Judgment of conviction reversed, etc.