## COURT OF APPEALS.

### June 29, 1912.

## THE PEOPLE v. ANGELO GIUSTO.

## THE PEOPLE v. VINCENZO CONA.

## THE PEOPLE v. FILEPO DE MARCO.

## THE PEOPLE v. SALVATORE DE MARCO.

(206 N. Y. 67.)

(1) MURDER—*PREMEDITATION AND DELIBERATION—COMMON LAW INDICT-
MENT.

Where an indictment charges defendants with murder in the first
degree, by one count as having been committed with a deliberate and
premeditated design to effect death, and by another count in the
common-law form, it permits a conviction upon proof of the killing
without design to effect death by defendants while engaged in com-
mitting or attempting to commit a felony.

(2) SAME—COMMITTAL BY ONE OF SEVERAL DEFENDANTS ACTING TOGETHER
IN COMMISSION OF ROBBERY.

Where defendants were associated in the crime of robbery or at-
tempted robbery, and a homicide was committed in furtherance of
their common purpose by one of them, all his associates present or at
hand and aiding and abetting in the perpetration of the lesser felony,
are equally liable for murder in the first degree; and where a number
of persons are acting together in the commission of the felony, a homi-
cide perpetrated in furtherance thereof is deemed to be within the
common purpose and all are alike responsible in law therefor.

(3) SAME—VALIDITY OF CONVICTION OF ALL, THOUGH ACTUAL KILLING DONE
BY ONE.

Upon examination of the evidence, on appeal by defendants from
judgments upon conviction of murder in the first degree, by which it
was clearly established that they were all engaged in robbing or at-
tempting to rob the inmates of a house, one of whom was killed by
some one of their number in furtherance of their common design, held,
that it was sufficient to sustain the conviction.

* See Notes 5-232, 26-101.

(4) SAME—EVIDENCE—ARTICLES TAKEN FROM ROOM OF MURDERED PERSON
FOUND IN PLACE WHERE DEFENDANTS HAD BEEN.

Evidence was properly admitted that articles belonging to a woman who was murdered which disappeared from her room at the time of the homicide were found at a place where two of the prisoners were allowed to visit shortly after, it appearing that these articles were not there before such visit, and that the prisoners had just come from the room whence the articles were taken.

(5) SAME—DISCREPANCY BETWEEN TESTIMONY OF WITNESSES AND CONFES-
SION OF DEFENDANTS NOT MATERIAL.

A discrepancy between the testimony of two of the witnesses and the confession of one of the defendants did not require a rejection of the material and essential points of the confession, and if these were true and were corroborated, as they were by additional proof in this case, that the crime had been committed, they established defendants' guilt.

People v. Kinney, 202 N. Y. 389, distinguished.

APPEALS by the defendants Giusto, Cona, Filepo De Marco and Cali from judgment of the Supreme Court, rendered December 4 and 5, 1911, at a Trial Term for the county of Westchester, upon verdicts convicting them of murder in the first degree.

Appeal by the defendant Salvatore De Marco from a judgment of the same court, rendered December 19, 1911, upon a verdict convicting him of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*James F. Dalton,* for Angelo Giusto, appellant. The alleged confession of the defendant was not a voluntary statement, and, therefore, is not admissible as evidence. (People v. McMahon, 15 N. Y. 385.) Testimony attempting to connect defendant with possession of different articles, viz., razor, watch and chain, a dollar bill, and other articles, subsequently identified as property belonging to deceased, was erroneously received. (People v. Kinney, 202 N. Y. 389.)

*James Dempsey,* for Vincenzo Cona, Filepo De Marco and Lorenzo L. Cali, appellants.

*S. Alton Ralph* and *Walter W. Westfall,* for Salvatore De Marco, appellant. The appellant's confession was not competent evidence and was improperly admitted. (People v. Phillips, 42 N. Y. 200; People v. McMahon, 15 N. Y. 385; Hendrickson v. People, 10 N. Y. 13; Regina v. Fennell, L. R. [7 Q. B. Div.] 147; Briscoe v. State, 67 Md. 6; Com. v. Myers, 160 Mass. 530; Com. v. Preece, 140 Mass. 276; Com. v. Kennedy, 135 Mass. 543; Com. v. Nott, 135 Mass. 269; Regina v. Jarvis, L. R. [1 C. C.] 96; People v. Kurtz, 42 Hun, 340.)

*Francis A. Winslow,* District Attorney (*Lee Parsons Davis,* of counsel), for respondent. The defendant Angelo Giusto and the others concerned were conspirators engaged in the commission of a felony. They had armed themselves in advance, and acting together, in accordance with well-arranged plans, had broken into the house for the purpose of robbing it, and were so engaged when one or more of their number killed Mary Hall. They were all, therefore, properly convicted of murder in the first degree. (People v. Giro, 197 N. Y. 152; People v. Madas, 201 N. Y. 349.)

WILLARD BARTLETT, J.:

On the morning of November 9th, 1911, Mrs. Mary Hall was stabbed to death in the apartment which she occupied in the Griffin homestead, a lonely dwelling on a farm situated on a side road between Yorktown Heights and Bradley's Camp, in the county of Westchester. The homicide was actually committed by one or more members of a party of six Italians, who were engaged at the time in robbing or attempting to rob the inmates of the house. The party consisted of these five defendants and one Santa Zanza, whose conviction of murder in the first degree

has heretofore been affirmed by this court. The robbery was planned by these men in Brooklyn. On the night before it was committed they went to Croton Lake station, in the vicinity of the Griffin homestead, by a train on the Putnam division of the New York Central lines, which left One Hundred and Fifty-fifth street, New York, at 12 a. m.; and after leaving the train they appear to have lurked about the neighborhood until an hour when it seemed likely that the men living in the Griffin homestead would have gone to their work, leaving only women in the dwelling.

The ground floor of the Griffin house was divided by a main hall from which a stairway led to the second story. The portion of the house on the east side of this hall was occupied by Miss Anna C. Griffin in whose employ was a hired man who worked upon the farm. The rooms west of the hall were occupied by Mrs. Gertrude Rae and her husband and two young children; while upstairs on the second floor were two rooms occupied by Mr. and Mrs. Hall.

While she was eating her breakfast Miss Griffin noticed a man walking around among the rocks in the edge of the woods north of the house "in a leisurely way, just looking over the country." After breakfast Mr. Hall and Mr. Rae went to Bradley's Camp and the hired man went to husk corn in a field at some distance from the house. About nine o'clock while Miss Griffin was engaged in ironing she noticed some Italians who came to a door where the family were accustomed to sell milk and stood there. She went to the door and asked them what they wanted. There were four or five of them. One of the men asked for eggs, and upon being told by Miss Griffin that she had none they said they wanted a quart of milk which she measured out for them, receiving fifty cents in payment. In order to make change she went inside to the dining room taking the money from a little basket there; and while she was counting it out she observed that the men were watching her

very intently through the kitchen window. Upon receiving the milk and their change the men drank the milk and went away.

After an absence of about five minutes the party returned to the door and again asked for eggs and also for chicken. Being told by Miss Griffin that she had neither they requested another quart of milk which she measured out in a cup and handed to Zanza. One of the men held out another fifty-cent piece toward her and as she reached to take it Cali seized her by the right wrist and pointed a revolver at her exclaiming "Hands up!" The other men stood around Cali at the time. He ordered her to lie down and Miss Griffin got down on her knees in obedience to his command whereupon he directed the others to go into the house and then led her in and demanded three thousand dollars from her. She said she had not so much money, to which he responded that he wanted all she had, and still covering her with his revolver he forced her to open her pocketbook and give him its contents, about four dollars.

Miss Griffin was the school-tax collector of her district and was also managing the farm. She kept most of her money in a safe in the hall and upon Cali's demand for more she went into the bedroom adjacent to the dining room where she obtained the key of the safe, to which she proceeded for the purpose of opening it. Cali had released her hand, but was following her with his revolver pointed at her all the time; and as they went past the foot of the stairs leading to Mrs. Hall's apartment above she saw a man coming downstairs, and as she knelt to open the safe another man coming out from Mrs. Rae's apartment. She opened the safe and took out fifty-five or sixty-five dollars, which she says she "handed up and somebody took it." The money consisted of ten-dollar bills and one five. She described the ten-dollar bills as "yellow backs," presumably thereby meaning gold certificates. Upon receiving the money the men disappeared. "They went so quickly," says Miss Griffin, "I didn't know how they went."

Mrs. Rae's experience with the marauders was somewhat different. She saw the Italians on both of their visits to the door at Mrs. Griffin's end of the house. When they passed her window the second time she recognized Santa Zanza and saw " some man race around the front stoop and pull open the screen door and run in the entrance to the main hall leading upstairs." After that she heard a scream and the scuffling of feet right above her where Mrs. Hall's room was situated. It was a woman's scream. Alarmed by the scream and the scuffling of feet Mrs. Rae closed her windows, pulled down the shades, ran out and got her little children and locked all the doors leading out of her rooms except that which opened into the main hall, which she forgot. This door was never used, there being a large brass double bedstead backed up against it. As Mrs. Rae stood in this bedroom with her children she heard a noise made by pushing the hall door against the bedstead; and the door gradually opened and Cona appeared, holding a revolver aimed directly at her. Taking one child in her arms and the other by the hand Mrs. Rae unlocked the outer door and fled, pursued through the room and for some distance outside by Cona, who continued to cover her with his revolver. When she reached a point which she designates as " about the fourth stone," Cona turned and went back into the house and Mrs. Rae started down the road. As she approached the stable another man, identified as Filepo De Marco, came out from behind the building and pointed a pistol at her, with the effect of backing her up toward the house from which she had just come. Thereupon all the other men came out of the house and ran in one direction up a hill opposite the cow barn, while Filepo De Marco backed away from Mrs. Rae and also fled, after shaking his revolver at her and saying that he would come back and kill her if she told. Filepo De Marco at this time was armed not only with a pistol, but with a sharp glittering knife, which he used to defend him-

self against attack by Mrs. Rae's dog, which had accompanied her in her flight.

After the men had disappeared Miss Griffin called to Mrs. Hall on the floor above, and receiving no response, went upstairs. On entering the living room, on the second story, she was horrified to find the body of Mrs. Hall, prostrate upon the floor of her apartment. Mrs. Hall had been gagged with her own apron and there were stains of blood upon her dress. Miss Griffin could detect no signs of breathing and Mrs. Hall was in fact dead, as the result of three stab wounds inflicted by a knife or some other sharp instrument in the hands of one or both of the robbers, who had made their way upstairs while Miss Griffin and Mrs. Rae were resisting the others below.

This narrative of the circumstances of the robbery and murder is a statement of the facts which the jury were warranted in finding to have been established by the evidence beyond a reasonable doubt.

The indictment in each case charged the defendant with murder in the first degree; by the first count as having been committed with a deliberate and premeditated design to effect the death of the said Mary Hall, and by the second count, in the common-law form. This permitted a conviction upon proof of the killing of Mrs. Hall without a design to effect her death by the defendants while engaged in committing or attempting to commit a felony, to wit, robbery (People v. Sullivan, 173 N. Y. 122, 17 N. Y. Crim. 180; People v. Friedman, 205 N. Y. 161, *ante*), and if the defendants were associated in the crime of robbery or attempted robbery, and the homicide was committed in furtherance of their common purpose by one of them, all his associates present or at hand and aiding and abetting in the perpetration of the lesser felony would be equally liable for murder in the first degree. Under the second subdivision of section 1044 of the Penal Law the killing of a

human being, unless it is excusable or justifiable, is murder in the first degree when it is committed, although without a design to effect death, "by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise." And where a number of persons are acting together in the commission of the felony, a homicide perpetrated in furtherance of the felony is deemed to be within the common purpose and all are alike responsible in law therefor. (People v. Flanigan, 174 N. Y. 356; People v. Giro, 197 N. Y. 152, 24 N. Y. Crim. 255; People v. Madas, 201 N. Y. 349, 25 N. Y. Crim. 432; People v. Friedman, supra.)

It was upon this theory that the several defendants were prosecuted and convicted. The evidence pointed strongly toward Zanza and Giusto as the actual perpetrators of the homicide; but whoever did the killing, the fact was clearly established that all the defendants were robbing or engaged in an attempt to rob the inmates of the Griffin homestead when Mrs. Hall was slain by some of their number in furtherance of their common design to plunder. This is sufficient to sustain the convictions, unless some error was committed upon the trial prejudicial to the defendants.

Giusto was the only one of these five defendants who took the stand in his own behalf. His testimony in and of itself is sufficient to sustain the verdict against him. It shows that he went to the Griffin homestead with the other defendants to rob the inmates of the house; that he participated actively in the effort to rob them; and that Mrs. Hall was killed by one of his confederates while the robbery was going on. His confession proved by the prosecution also shows that he was an actual participant in the very act of killing; for while he attributes the stabbing to Zanza, he admits that he held Mrs. Hall while Zanza thrust the stiletto into her body. It is contended in his

behalf that this confession was erroneously received in evidence because it was not voluntary; but the proof on this subject is all the other way and shows that the confession was clearly admissible under section 395 of the Code of Criminal Procedure. The only other point presented by the brief for this defendant relates to a gold watch and chain and bracelets, belonging to Mrs. Hall, which disappeared from her room at the time of the robbery and murder. In the afternoon of the same day Zanza and Giusto were courageously arrested by George S. Purdy, a former constable of Westchester, who, although unarmed himself, skillfully deprived them of their revolvers and took them into custody. While conducting them to the chief of police at Ossining the party stopped at a grocery store where the prisoners were allowed to visit a privy together; and in this ouhouse, two days later were discovered the watch and chain and bracelets which have been mentioned. There was testimony that these articles were not there before the place was thus visited by Zanza and Giusto; and plainly the fact of their discovery was competent and convincing evidence against them both, for both had confessedly just come from the room whence the objects had been feloniously taken. The circumstances are essentially different from those in the case of People v. Kinney (202 N. Y. 389, 26 N. Y. Crim. 143), where there was no proof that the keys there in question might not have been in the place where they were found before that place was visited by the defendant.

In the case of Cona no evidence whatever was introduced on behalf of the defendant. On this appeal his counsel challenges the sufficiency of his identification by Mrs. Rae as the person who pushed open the door of her bedroom and pointed a revolver at her as he followed her out. That identification, however, was clear and positive and the jury must have believed that she was not mistaken when she pronounced Cona to be the man. In the absence of any contradiction we cannot

say that they are wrong. The remainder of the argument in behalf of the defendant Cona is based on the proposition that the evidence fails to show that he perpetrated or participated in the crime of murder which was committed upstairs, and that the murder cannot properly be regarded as having been committed in furtherance of the crime of robbery. It is impossible, however, to read the evidence as to what Cona himself did without being convinced that he shared in the general purpose of the confederates to rob such inmates of the house as should be found to have any property worth taking, or that he aided in carrying out this purpose by entering Mrs. Rae's apartment and driving her out of it at the point of his pistol. It will be remembered that according to the testimony of Miss Griffin when Cali seized her by the wrist he motioned to the other men and they rushed into the house; and there can be no reasonable doubt that it was pursuant to the direction thus given that Cona forcibly pushed his way to the apartment of Mrs. Rae. Indeed, the proof in behalf of the prosecution points so clearly to the existence of a common purpose on the part of the band of robbers and demonstrates so unquestionably that the homicide was committed in the prosecution of that purpose as to leave no basis whatever for the suggestion that the conviction of Cona of the crime of murder in the first degree is shocking to " our merciful standards of justice and humanity." A man who forcibly makes his way into an apartment occupied by a defenseless woman and her children and drives her out of it at the point of his pistol while his confederates are robbing and murdering another woman upstairs in the same house is not entitled to any leniency at the hands of the law.

The chief argument in behalf of the defendants Filepo De Marco and Cali is the alleged absence of any connection between the murder in Mrs. Hall's room and the robbery on the ground floor. This point is disposed of by what has already

been said as to the general aspects of the robbery as the result of a conspiracy in furtherance of which the homicide was committed. Neither of these defendants testified in his own behalf or introduced any evidence to contradict that of the prosecution.

The complicity of the defendant Salvatore De Marco in the conspiracy and robbery was amply established by his confession made to the sheriff and other officers of Westchester county. The record does not sustain the contention of his counsel that the confession was obtained by methods which the law forbids. On the contrary, the circumstances under which it was procured rendered it clearly competent under the statute. (Code Civ. Proc., § 395.) In People v. Rogers (192 N. Y. 331, 22 N. Y. Crim. 376), this court sanctioned the admission of a confession which was obtained as the result of far more urgency by the captors of the prisoner than was exercised or attempted in the present case.

There was ample " additional proof that the crime charged has been committed " required by section 395 of the Code of Criminal Procedure in order to render the confession of a defendant sufficient to warrant his conviction. The substance of the crime charged was robbery committed by a band of conspirators, in the course of which one of them killed Mary Hall. The death of Mrs. Hall under the circumstances which have already been narrated was proof of the homicide. The proof additional to the confession of his complicity in the robbery was furnished by the discovery of a revolver and some money which this defendant had hidden in the neighborhood of the Griffin house shortly after the robbery and murder. In his confession he stated that he had left his revolver and money in the vicinity, and upon being taken to the place which he indicated the money—forty-five dollars in bills, four tens and a five—was found under a stone, and within a few feet of the money was discovered a thirty-eight calibre pistol fully loaded.

It is difficult to imagine how this defendant could have led the officers to the place where these things were found unless he had previously visited the spot and actually left the money and revolver there himself. Within the authorities this corroborative evidence was quite sufficient. (People v. Deacons, 109 N. Y. 374; People v. Brasch, 193 N. Y. 46.)

According to the confession of the defendant Salvatore De Marco, he was the member of the party who did the acts which the testimony of Miss Griffin and Mrs. Rae attributes to the defendant Cali, and neither of these ladies would identify this defendant as having done what he confessed that he did. His counsel insists that this discrepancy deprives the evidence for the prosecution of the cogency and weight necessary to sustain a conviction, but the jury were not required to accept the contradiction by the ladies as conclusive. As the learned trial judge pointed out in denying a motion to dismiss the indictment: "They did not say that he was not one of the men engaged in the crime of robbery. They say simply that they do not recognize him as one of the men and they say moreover that he is not the man who dealt directly with them." If the jury believed the confession of the defendant to the effect that he was there and was one of the men engaged in robbing the house, it made no difference what they believed as to the precise character of his conduct in the course of the robbery. The inability of the ladies to recognize this defendant was undoubtedly a point in his favor to the benefit of which he was entitled, and we must conclude that it was given its full weight, for the jury were clearly instructed in regard to the matter in the charge of the court. As has been intimated, this discrepancy between the confession and the testimony of Miss Griffin and Mrs. Rae did not require a rejection of the material and essential parts of the confession, and if these were true and were corroborated, as we think they were, by additional proof

that the crime charged had been committed, they established the defendant's guilt.

There is no ground on which this court would be justified in interfering with the verdict in any of these cases and the judgments of conviction should be affirmed.

CULLEN, Ch. J., HAIGHT, VANN, WERNER and CHASE, JJ., concur; GRAY, J., absent.

Judgments of conviction affirmed.