## COURT OF APPEALS.

### April 17, 1923.

## THE PEOPLE v. JOHN SOBIESKODA.

(235 N. Y. 411.)

(1) Murder in first degree—Indictment in common-law form permits conviction on proof that defendant without design to effect death of deceased killed him while attempting to kill another.

An indictment charging in the common-law form murder in the first degree permits a conviction upon proof that defendant without a design to effect the death of the deceased killed him while attempting to commit the crime of murder in the first degree against another. Any overt act, immediately connected with the commission of an offense and forming part of a series of acts which if not interrupted or frustrated would end in the commission of the actual offense, is, if done with a guilty intent, an attempt to commit the offense.

(2) Same—Plot by defendant and another to kill husband of defendant's paramour—Killing of brother of intended victim by defendant's accomplice while both were engaged in attempt to carry out their common design.

Where, upon the trial of an indictment for murder in the first degree, it appeared that while defendant was engaged with a companion in attempting to carry out a plot to kill the husband of defendant's paramour, his companion killed the brother of their intended victim, the question material to defendant's guilt was whether decedent was killed in the prosecution and furtherance of the unlawful purpose to effect the death of his brother, not whether he was killed while such unlawful purpose was in existence.

(3) SAME.

The burden was on the People to establish that defendant was a principal in the killing of decedent with malice aforethought. His accomplice was defendant's agent only in the prosecution of the design against their intended victim. Only what he did in the execution of that design is chargeable against defendant.

(4) SAME.

It is the duty of this court to "give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights" (Code Crim. Pro. § 542), and the district attorney urges the defendant's guilt is so clearly established that his substantial rights were not affected by these errors. But the question of substantial right is not the abstract question of guilt or innocence. Error is substantial when we can say that it tended to influence the verdict. Nor should we sustain a conviction erroneously secured on one theory on the conjecture that it would have followed just the same if the correct theory had been applied.

(5) SAME—ERRONEOUS CHARGE TO THE EFFECT THAT THE TEST WAS THE MERE EXISTENCE OF A COMMON DESIGN TO KILL THE BROTHER OF DECEDENT.

The basic error on which all the court's instructions rested, i.e., that the test was the mere existence of a common design to kill his brother when decedent was killed, given finally when some of the jurors were considering a verdict of guilty in the second degree, seems to have been highly prejudicial to the defendant. As the material fact of the existence of such common design to kill was not in dispute, it amounted practically to a direction to find defendant guilty of murder in the first degree as charged in the indictment, without considering at least one substantial theory of the defense.

(6) SAME—MATERIAL QUESTION WAS WHETHER DECEDENT WAS KILLED IN PROSECUTION AND FURTHERANCE OF UNLAWFUL PURPOSE.

"The killing of a human being * * * is murder in the first degree, when committed: * * *

"2. * * * without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise." (Penal Law, § 1044, subd. 2.)

If a literal construction is given to the words "without a design to effect death," it might be said that this subdivision includes only such killings as are unintentional or accidental, but the purpose of the law plainly is merely to make the element of intent immaterial in such cases.

APPEAL from a judgment of the Supreme Court, entered June 12, 1922, at a Trial Term for the county of Genesee

upon a verdict convicting the defendant of the crime of murder in the first degree.

*William H. Coon, James F. Crowley,* and *Matthew W. Bennett* for appellant.    Under the evidence in this case the jury was not warranted in finding the defendant guilty of murder in the first degree, or of any other crime, and the court should have so held, as a matter of law, and refused to submit defendant's guilt to the jury.   (People v. Galbo, 218 N. Y. 283; People v. Miles, 143 N. Y. 389; People v. Molinieux, 168 N. Y. 264; People v. Loose, 199 N. Y. 205; People v. Van Norman, 231 N. Y. 454; Kemp v. Comm., 80 Va. 443.)    The court erred in charging the jury that "it was not necessary for premeditation and deliberation to kill Stanley, but if there was a premeditated and deliberate intent to kill Vincent, and while engaged in that design, in pursuance of that agreement, they killed Stanley, then that was premeditation and deliberation." (People v. Marwig, 227 N. Y. 382; People v. Merendi, 213 N. Y. 600; People v. Spohe, 206 N. Y. 516; People v. Huter, 184 N. Y. 237.)

*James L. Kelly* and *Albert J. Waterman,* for respondent. The evidence proved that the defendant was guilty of murder with deliberation and premeditation.   (People v. Sullivan, 173 N. Y. 122; People v. Flannigan, 174 N. Y. 356; People v. Wilson, 145 N. Y. 628.)

Pound, J.:

The indictment in three counts charged defendant with the crime of murder in the first degree in taking the life of Stanley Luczak on March 9, 1922.    The first count charged that defendant, with the deliberate and premeditated intent to cause the death of Vincent Luczak, killed Stanley Luczak; the second count, which was withdrawn by the district attorney on the trial, charged that defendant, without a design to effect the

death of Stanley, killed him while attempting to commit the crime of murder in the first degree against Vincent Luczak (Penal Law, § 1044, subd. 2); the third count charged in the common-law form the murder in the first degree of Stanley Luczak. This third count permitted a conviction upon proof of the facts alleged in the second count. (People v. Friedman, 205 N. Y. 161, 164.)

Up to the point of the actual killing the material facts are not in dispute. Vincent and Stanley Luczak were brothers. Stanley with his wife and children lived on a farm in the town of Bethany, Genesee county. Vincent and his wife Edna lived in the city of Buffalo. Defendant was a molder by trade. He also lived in Buffalo, but he had been out of regular work for some months before the homicide and his sister-in-law testified that he made moonshine whisky and drank and got drunk frequently during that period. From the statement of defendant, taken after his arrest, it appears that he knew the Vincent Luczaks well and that he and Edna had had adulterous relations. Edna had reasons for desiring to rid herself of her husband beside her attachment to defendant. Real property was owned by them jointly and his life was insured for her benefit. The relations between defendant and Edna caused trouble and Vincent had threatened to shoot defendant.

Defendant says Edna and he formed a plot to have Vincent put out of the way, and she promised defendant to pay a man called Joe Gordon, whom defendant had retained for the purpose, $600 to kill Vincent. On this promised consideration Gordon undertook the job. Edna furnished $30 for the purchase of a revolver which Gordon bought in the presence of defendant from Max Cheiffitz about two weeks before the homicide.

But Vincent was not killed. His brother Stanley was killed in these circumstances. On the day of the homicide Vincent and Edna took the train from Buffalo to Linden, a station about two and one-half miles from the Bethany farm. Defendant

and Gordon were at the Buffalo station to see them off. They then started for Bethany in an automobile. They planned a sham holdup wherein Vincent was to be killed on the way to Stanley's house, but they abandoned this purpose because it was too light. They waited until after dark, and planned to shoot Vincent in the house through the window. Gordon or defendant looked in the window in the front door. One of Stanley's little children saw the face and told the others who looked around and found no one. Defendant and Gordon ran and hid themselves behind a stump along the roadside for twenty minutes, when Gordon came back to the house. This time Vincent saw the face in the window, a general alarm was sounded and Stanley came out of the house with Vincent and others. Stanley had a shotgun. Defendant and Gordon were hidden behind the stump. Stanley came down the road with the shotgun looking for the intruders. Vincent was near the house, some distance from Stanley. Defendant says in his statement that Joe fired the first shot toward Stanley but into the ground; that Stanley shot in the direction of the stump and struck defendant in the leg; that when he fired, defendant ran away and Joe kept on firing. It appears elsewhere that Gordon fired seven shots in all, four of which struck Stanley, causing instant death. Defendant says that he did not know whether the man with the shotgun was Vincent or Stanley; that Joe and he made their escape in their automobile and he did not know that it was Stanley who had been killed until he read an account of the homicide in the newspaper.

The case was submitted to the jury under the Penal Law (§ 1044, subd. 1), which provides:

" The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when committed:

" 1. From a deliberate and premeditated design to effect the death of the person killed, *or of another.*"

The court properly instructed the jury: " A person concerned in the commission of a crime, whether he directly commits the

act constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime, is a ' principal.' " (Penal Law, § 2.) The court further instructed the jury in substance that, so long as defendant and Gordon had the design to kill Vincent, it mattered not how the death of another was effected; that if defendant was at the scene of the killing with the design to kill Vincent, it made no difference who else Gordon killed or under what circumstances he killed him; that the wicked intent and design against Vincent infected and made joint all the acts of either. The court said: " If while they were still confederating and working together (having in their minds the killing of Vincent) they took the life of Stanley, it matters not who fired the fatal shot." In reply to a question from one of the jurors as to the proper rule to guide their action if the killing was " done on the impulse of the moment, without deliberation or premeditation," the court said: " It is not necessary that you find deliberation and premeditation to kill Stanley, but you must find deliberation and premeditation to kill somebody."

On this theory, it was the duty of the jury to convict defendant even if they found that Gordon, not having abandoned the design against Vincent, but following the suggestion of his own wicked heart, turned aside from the execution of such design and willfully killed Stanley. The court also charged the jury in substance that only if defendant and Gordon had abandoned their common purpose against Vincent, could it be said that Gordon was acting independently and alone in shooting Stanley.

This was error. The question material to defendant's guilt on this branch of the case was whether Stanley was killed in the prosecution and furtherance of the unlawful purpose to effect the death of Vincent, not whether he was killed by Gordon while such unlawful purpose was in existence (People v. Giusto, 206 N. Y. 67, 73), even though the killing of Stanley was accomplished neither while defendant and Gordon were acting

together in the commission of the felony against Stanley nor in the furtherance of the felony they had planned against Vincent.

If A and B start out together with the design to kill C, and while that design exists B kills D as a separate and distinct act not as a part of the offense designed against C, A is not guilty of the crime of murder in the first degree or of any crime, merely because he has murder in his heart, directed at C at the time of such killing. (Lamb v. People, 96 Ill. 73; Williams v. State, 81 Ala. 1, 60 Am. Rep. 133, 135; People v. Marwig, 227 N. Y. 382.) But if A and B start out with an evil intention against C to take his life, and in the execution of such purpose either A or B kills D, it shall be no excuse to either to say that the intention was to kill C and not the person killed. "For the end of the act shall be construed by the beginning of it, and the last part shall taste of the first, and as the beginning of the act had malice prepense in it, and consequently imported murder, so the end of the act, viz., the killing of another, shall be in the same degree, and therefore it shall be murder." (Reg. v. Saunders, Plow. 473, 474; People v. Miles, 143 N. Y. 383, 388.) "Where a number of persons are acting together in the commission of the felony, a homicide perpetrated in furtherance of the felony is deemed to be within the common purpose and all are alike responsible in law therefor." (People v. Giusto, supra.)

The burden was on the People to establish that defendant was a principal in the killing of Stanley with malice aforethought. By a process of exclusion, we may eliminate from consideration several possible theories of defendant's guilt so far as they are developed by the record now before us. (a) If Gordon shot at Vincent, intending to wound or kill him, and by a false aim killed Stanley, without a design to take his life, defendant would be guilty of murder in the first degree. (People v. Miles, supra.) But the evidence does not suggest that Gordon's aim was directed at Vincent. On the contrary, he

aimed and aimed well at a person not known to be Vincent.
(b) If Gordon shot at Stanley, mistaking him for Vincent, the
killing would be with malice prepense as to defendant.    But
the evidence does not suggest that Gordon or defendant knew
who was shot until they read of the killing in the newspaper
the next morning.  The theory of mistaken identity rests on the
evidence that the original design was against Vincent, but it is
only a supposition that Gordon mistook Stanley for Vincent
when the shots were actually fired.   (c) The People contend
on the argument of this appeal that evidence tending to show
that defendant killed Stanley appears in the case.    We are
unable to discover it, except by purely speculative processes.

Three theories of guilt are fairly presented by this record:
(a) If the common purpose of defendant and Gordon included,
either in its inception or at any time before the shooting of
Stanley, not only the death of Vincent, but also the purpose to
resist to the last degree, even to the taking of human life, all
who interfered with the execution of that design; if they had
formed a general resolution against all opposers; against all
who stood in the way of their murderous project; then they
were both guilty of murder in the first degree if the killing of
Stanley was due to his interference with such purpose and
design.    The evidence that both remained on the scene when
they were driven away from the house, in ambush, with their
deadly purpose unaccomplished, would authorize the jury to
infer that the full purpose of the combination was still in force
although it had not been carried out, and that the killing of
Stanley was in the execution of their common illegal purpose
against Vincent.  (Ruloff v. People, 45 N. Y. 213; People v.
Wilson, 145 N. Y. 628, 631; People v. Marwig, *supra*.) (b) If
defendant and Gordon formed the deliberate and premeditated
design to take the life of the man in the road with the gun, who
proved to be Stanley, before Gordon shot at him, both would be
guilty of murder in the first degree.    Stanley was armed, look-
ing for the invaders, with the seeming purpose of turning his

gun on them. · They were together acting in concert. They had time to form their design. Self-protection—not necessarily self-defense—may have suggested his death both to defendant and Gordon. Ignorance as to the identity of their victim would not be material if they so designed to kill him. It is enough that he was a menace to their safety, or that they thought he was, or was in the way of the execution of their purpose against Vincent. (c) Any overt act, immediately connected with the commission of an offense and forming part of a series of acts which if not interrupted or frustrated would end in the commission of the actual offense, is, if done with a guilty intent, an attempt to commit the offense. If the jury believed that defendant and Gordon would have killed Vincent if they had not been frustrated in their design by the presence and interference of Stanley; if their act had gone to the extent of placing it in their power to commit the offense unless interrupted, and nothing but such interruption prevented the present commission of the offense, we think that it might have been found that their conduct as above set forth tended sufficiently to effect the death of Vincent; went sufficiently beyond mere preparation; amounted to overt acts intentionally done toward the commission of the offense against Vincent, so as to constitute an attempt to commit the crime of murder in the first degree. (People v. Sullivan, 173 N. Y. 122; Penal Law, § 2.)

" The killing of a human being * * * is murder in the first degree, when committed: * * *

" 2. * * * without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise." (Penal Law, § 1044, subd. 2.)

If a literal construction is given to the words "without a design to effect death," it might be said that this subdivision includes only such killings as are unintentional or accidental, but the purpose of the law plainly is merely to make the element

of intent immaterial in such cases. (People v. Friedman, *supra*.)

On the other hand, (a) if Gordon shot Stanley *after* the explosion of the plot or the abandonment of the common design against Vincent, defendant would be free from criminal responsibility. But the evidence points to the continued existence of the common design. (b) Gordon may, notwithstanding the existence of the design against Vincent, have shot at the man in the road, with no intention of killing Vincent, nor in the furtherance of the common purpose, but for his own purpose. For that act, defendant would not be criminally responsible. While it may be urged that the evidence is very slight that Gordon formed and executed such a fresh and independent design, outside of the common design, the fact that the possibility was a remote one makes it no less a hypothesis to be presented to the jury. Gordon was defendant's agent only in the prosecution of the design against Vincent. Only what Gordon did in the execution of that design is chargeable against defendant. (People v. Giusto, *supra*.) Defendant's moral guilt, as confessed by him, is clearly established. His guilty design against Vincent was the remote, if not the proximate cause of the killing. Yet, however bad his moral predicament, his legal guilt may be defined only in terms of law.

It is the duty of this court to " give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights." (Code Crim. Proc., § 542.) The district attorney urges that defendant's guilt is so clearly established that his substantial rights were not affected by these errors. But the question of substantial right is not the abstract question of guilt or innocence. A guilty man is entitled to a fair trial and a trial is not fair if the verdict may be related to errors in the judge's charge. Error is substantial when we can say that it tended to influence the verdict. Nor should we " sustain a conviction erroneously secured on one theory on the conjecture that it would have followed just the same if the

correct theory had been applied." (Hiscock, Ch. J., in People v. Smith, 232 N. Y. 239, 244.)

With the best intention to deal fairly with a defendant, the trial court may fail to state clearly the principles of law which should control the conduct of the jury and the legal distinctions which they should apply in arriving at their verdict. (People v. Odell, 230 N. Y. 481.) A proper comprehension of the law to be applied to the facts as established by the evidence may well have been lacking in the minds of the jury when they withdrew for final consideration. Defendant's counsel, with his eighty requests to charge, some of them raising the points herein discussed, many of them irrelevant abstractions only, did not aid in clarifying the issue. The basic error on which all the court's instruction rested, *i.e.*, that the test was the mere existence of a common design to kill Vincent when Stanley was killed, given finally when some of the jurors were considering a verdict of guilty in the second degree, seems to have been highly prejudicial to the defendant. As the material fact of the existence of such common design to kill was not in dispute, it amounted practically to a direction to find defendant guilty of murder in the first degree as charged in the indictment, without considering at least one substantial theory of the defense.

The judgment of conviction should, therefore, be reversed and a new trial ordered.

HISCOCK, Ch. J., HOGAN, McLAUGHLIN and ANDREWS, JJ., concur; CARDOZO and CRANE, JJ., dissent.

Judgment reversed, etc.