## COURT OF APPEALS.

December 15, 1922.

## THE PEOPLE v. RAYMOND C. COLLINS.

(234 N. Y. 355.)

(1) MURDER IN FIRST DEGREE—ATTEMPT TO COMMIT CRIME.

An attempt is an endeavor to do an act carried beyond mere preparation but falling short of execution. There must be, to constitute an attempt to commit crime, some overt act. Mere purpose or intent is not enough.

(2) SAME.

Upon the trial of defendant upon an indictment charging him with murder in the first degree, in that a watchman was killed by his companions while they were engaged in a felony or in an attempt to commit a felony, there was evidence to support a conclusion that defendant and

others planned to commit a burglary, that they proceeded on a barge to a landing and then walked about a mile to the building, tried two or three doors and finding them locked, walked around the building and observing a watchman approaching, attempted to escape and that, defendant having been caught, and calling for help, his companions struck the watchman a number of blows from the effect of which he died. There was also evidence on the part of defendant that he had no intention of stealing but approached the building and tried the doors for an innocent purpose and had nothing to do with the assault on the watchman and only learned of it later. There was no actual burglary or larceny; at most an attempt to commit a crime. If the defendant reconnoitered the warehouse to determine the means of forcing his way in, if he tried the doors with the design of effecting an entrance and stealing merchandise stored there, the jury might say that the attempt to commit burglary or larceny had been made out. If he tried them, however, merely from curiosity, if having tried them he abandoned his purpose, then either there was no attempt, or the attempt was ended.

(3) CONSPIRACY.

Conspiracy itself is not a felony. It is but a misdemeanor. Each conspirator is liable, however, for the acts of every associate done in the effort to carry the conspiracy into effect. If, therefore, the conspiracy be to commit a felony of such a nature as burglary or robbery, if by one conspirator that felony is actually committed or attempted, if in the course of it a person is killed, every conspirator is guilty of murder. Every conspirator is an accomplice in the acts committed in pursuance of it. Therefore, the defendant might not be convicted upon the evidence of a co-conspirator alone without corroboration. Having these considerations in mind the charge of the trial judge on this question was neither clear nor correct.

(4) MURDER—ERRONEOUS CHARGE.

In view of his own story the defendant had the right to insist that whether or not there had been a conspiracy to effect a burglary or a larceny and whether or not an attempt to commit either of these crimes had been committed in pursuance of this conspiracy, yet at the time of the assault upon the watchman, that attempt had been abandoned by every one and that he as well as his associates were endeavoring to escape. Indicted as he was for murder upon the theory that the watchman was killed while the conspirators were engaged in the commission of a felony, the court should have charged that if no felony was in progress no conviction could be had.

(5) SAME.

The charge is also erroneous in the following, among other, respects: 1. It fails to note that the act of one to be binding upon the others

must be an act carried out in pursuance of the conspiracy. 2. It does not lay down the correct rule that to make a conspirator guilty of an act of murder because of the killing of a person by another conspirator, the conspiracy must be to commit a felony and the felony must be in the course of commission when the killing occurred. 3. It omits to state, in relation to certain aspects of the case, that the elements of intent, premeditation and deliberation are to be considered.

(6) SAME—EVIDENCE—ERRONEOUS ADMISSION OF TESTIMONY OF ANOTHER IN PRESENCE OF DECEASED.

It is competent to give evidence as to statements of others in the presence of the accused when they are of such a kind and made under such circumstances that they properly and naturally call for an answer —where silence may be taken for an admission. If he is silent when he should have denied, the presumption of acquiescence arises. But the testimony here admitted is justified by no such rule. Defendant had already told his story. He had already contradicted the statements made. Under such a state of facts the failure to renew his denial was no indication of acquiescence in any event. Nor were the statements such as naturally called upon him for an answer. The testimony should not have been received.

(Argued November 27, 1922; decided December 15, 1922.)

APPEAL from a judgment of the Richmond County Court, rendered April 24, 1922, upon a verdict convicting defendant of the crime of murder in the first degree.

*Frank H. Innes,* for appellant.   Error was committed in the charge of the court by submitting to the jury the question of conspiracy. (Penal Law, §§ 580, 1044.)   The court erred in refusing to charge as requested that if the jury finds that prior to the assault upon the deceased the defendant had left the scene thereof for the purpose of escape, they should acquit him. (People v. Marwig, 227 N. Y. 382; People v. Giro, 197 N. Y. 152; People v. Schleiman, 197 N. Y. 383; People v. Smith, 232 N. Y. 239.)   The charge of the court as a whole was prejudicial to the defendant. (People v. Odell, 230 N. Y. 481.)

*Joseph Maloy, District Attorney (Charles B. Dullea* and *John M. Braisted,* of counsel), for respondent.   The court

submitted to the jury the question of conspiracy to commit a felony and not merely the question of conspiracy. (People v. Giro, 197 N. Y. 157.) The court's refusal to charge was proper. (People v. Chapman, 224 N. Y. 478; People v. Marwig, 227 N. Y. 382.)

ANDREWS, J.:

In September, 1921, a large quantity of liquor was stored in a warehouse on the Staten Island water front. Some time in February, 1922, the defendant with a number of others obtained knowledge of this fact.

From the evidence before it the jury was entitled to reach the conclusion that the defendant and these men planned to steal this liquor, conveying it by water to New York city, there disposing of it and dividing the resulting proceeds among themselves. This plan involved obtaining access to the warehouse in some way and the binding or silencing of an old man who was night watchman at the place. To carry out this idea Collins and his associates procured a steam barge. On the night of March 1st they boarded it at a dock in New York. One of these associates brought with him three strangers who were to carry the liquor to the barge and who were, it may be inferred, to take care of the watchman. About 7 o'clock the barge started for Staten Island and was docked about a mile from the warehouse. Here Collins and the three strangers left it and approached the warehouse. They tried two or three doors but found them locked. They then walked around the building. While they were doing so and while apparently on the public street they saw the watchman approaching with a lantern. In the darkness the three men mentioned were able to escape observation by running around the angle of the building. Collins was slower. He attempted to dive beneath some freight cars but his coat was caught upon a hook hanging from one of them. The watchman, Connors, saw him. He struck at him with a stick. Collins called for help. The three men

reappeared.    Collins told them to get the watchman.    They struck him a number of blows and from the effect of these blows Connors subsequently died.    Collins and the three men with him then escaped.

Collins' own story, however, is that he had no intention of stealing the liquor.    He supposed that the owner wished to move it and that he was carrying out the owner's instructions in doing what he did.    With the three men he came to the warehouse on the night in question, tried the doors and found them locked, started around the building and saw the watchman with his lantern.    He then started to duck under the cars and was caught by a pin or hook.    The watchman struck at him, but Collins told him to wait, came from beneath the cars and had a conversation with him, telling him that he was looking for a certain boat landing.    The watchman directed him where to go and they parted.    He never came back and had nothing to do with the assault on Connors.    He only learned of it later.

The defendant with others was indicted for murder in the first degree in that Connors was killed while the defendants were engaged in a felony or in an attempt to commit a felony. He was convicted and from the judgment of conviction this appeal is taken.

Under the circumstances the defendant was entitled to have the jury instructed fully and clearly as to the law applicable to the case.    We do not think that this was done.    There was no actual burglary or larceny.    At most there was an attempt to commit one of these crimes.    It is said in the Penal Law, " An act, done with intent to commit a crime, and tending but failing to effect its commission, is ' an attempt to commit that crime.' " (Penal Law, § 2.)    An attempt to commit a felony is also itself a felony.    (Penal Law, § 261.)    An attempt is an endeavor to do an act carried beyond mere preparation but falling short of execution.    (Wharton Crim. Law, § 181.) There must be, to constitute an attempt, some overt act.    Mere

purpose or intent is not enough.   How closely, however, the
overt act must be connected with the intended crime is a diffi-
cult question.   " The question whether an attempt to commit
a crime has been made is determinable solely by the condition
of the actor's mind and his conduct in the attempted consum-
mation of his design."   (People v. Moran, 123 N. Y. 254,
257.)   Merely procuring tools to commit a burglary may not
be enough; nor may merely starting towards a building some
distance away.   " But if the jury believed that the defendant
and his associates were at the post office reconnoitering or in-
specting it with intent to break it open, and that they would
have done so had their design not been frustrated by the pres-
ence or interference of the deceased, the police officr, then, I
think, it could properly find that they were engaged in an
attempt to commit burglary."   (People v. Sullivan, 173 N. Y.
122, 135.)   It is a matter of degree.   But at least it must be
a step in the direct movement towards the commission of the
crime after preparations have been made.   " Felonious intent
alone is not enough, but there must be an overt act shown in
order to establish even an attempt.   An overt act is one done
to carry out the intention, and it must be such as would
naturally effect that result, unless prevented by some extraneous
cause."   (People v. Mills, 178 N. Y. 274, 284.)

Hiring the barge, proceeding on it to Staten Island, walking
from its landing place in the direction of the warehouse would
not under the circumstances of this case constitute an attempt.
If the defendant, however, reconnoitered the warehouse to
determine the means of forcing his way in, if he tried the doors
with the design of effecting an entrance and stealing the liquor
stored there, the jury might say that the attempt to commit
burglary or larceny had been made out.   If he tried them,
however, merely from curiosity, if having tried them he aban-
doned his purpose, then either there was no attempt, or the
attempt was ended.   It was important that the jury should
have understood this issue.   We doubt if they did so.   They

certainly received no instruction from the court that would make it clear to them. The crimes of burglary and grand larceny were defined and they were simply told that they should decide whether the killing was effected by reason of the fact that the defendant was attempting to commit either of these crimes. Unless he was engaged in such an attempt he must be acquitted since the indictment is restricted to a charge of murder so committed.

The matter of conspiracy is involved in a consideration of this case under various aspects. The killing of a human being is murder in the first degree where done by a person engaged in the commission or in the attempt to commit a felony. Conspiracy itself is not a felony. It is but a misdemeanor. Each conspirator is liable, however, for the acts of every associate done in the effort to carry the conspiracy into effect. If, therefore, the conspiracy be to commit a felony of such a nature as burglary or robbery, if by one conspirator that felony is actually committed or attempted, if in the course of it a person is killed, every conspirator is guilty of murder. (People v. Michalow, 229 N. Y. 325.) Conspiracy is here important also upon another theory. Every conspirator is an accomplice in the acts committed in pursuance of it. Therefore, the defendant might not be convicted upon the evidence of a coconspirator alone without corroboration. Having these considerations in mind, we believe that the charge of the trial judge on this question was neither clear nor correct.

The jury was told that the People had not claimed that the defendant was alone in the intention to commit a crime on this night but that this crime was to be committed as the result of a common understanding or agreement between two or more persons, which constituted a conspiracy. A definition of conspiracy is then given and the jury is told that once a conspiracy is formed up to the time it is carried out the act or acts of every conspirator is binding on the others. This in itself is not accurate. It fails to note the qualification that the act of

one to be binding on the others must be an act carried out in pursuance of the conspiracy. The jury is then told that if in the carrying out of the provisions of the agreement entered into between them a person is unlawfully killed every man who was a party to that conspiracy, whether he was present at the time the act was committed or not, is equally guilty of murder. Again the statement is inaccurate. To make a conspirator guilty of an act of murder because of the killing of a person by another conspirator, the conspiracy must be to commit a felony and the felony must be in the course of commission when the killing occurred. Again, "The law says that if a homicide which was murder was committed by one of several persons in the prosecution of an unlawful purpose or.common design in which the combining parties had united, and for the effecting whereof they had assembled, all were liable to answer criminally for the act; and if the homicide was murder, all were guilty of murder, assuming that it was within the common purpose. All present at the time of committing the offense are principals, although one acts, if they are confederates, and engaged in the common design of which the offense is a part." If we understand this statement it was not correct for the same reason as that last criticized. If it refers to a conspiracy to commit murder it is equally incorrect. In such a case the elements of intent, premeditation and deliberation are to be considered.

It is true that later the court said that he left it to the jury to determine whether a conspiracy had been entered into for the purpose of committing a burglary or the crime of grand larceny and who were the parties to that conspiracy, and he told them that all the parties to a conspiracy would be guilty of murder in the first degree if the watchman was killed while the conspirators were carrying out that unlawful purpose if that purpose was the commission of a felony. Still further in answer to a request to charge the court said that conspiracy is

a misdemeanor and could not be made the basis of a verdict for constructive murder such as this involves.

While undoubtedly the trial judge had in his mind the correct rules in regard to conspiracy and its relation to the charge of murder, we do not think that he succeeded in communicating these rules to the jury in such a form that they could be expected to understand them.

In view of his own story the defendant had the right to claim that whether or not there had been a conspiracy to effect a burglary or a larceny and whether or not an attempt to commit either of these crimes had been committed in pursuance of this conspiracy, yet at the time of the assault upon Connors that attempt had been abandoned by every one and that he as well as his associates were endeavoring to escape.  Apparently they were none of them upon the premises of the warehouse, but were upon a public street and concededly none of them were carrying any booty with them.  Indicted as he was for murder upon the theory that Connors was killed while the conspirators were engaged in the commission of a felony, if no felony was in progress no conviction could be had.  Hence, the need of accuracy in the comments made by the trial judge on this question.

The jury was told that if the killing was effected by reason of the fact that the defendant in company with others was attempting to commit a felony and " while escaping or attempting to escape from the consequences of their act they were intercepted by the watchman and for the purpose of effecting an escape from the premises struck him and injured him so that as a result of the injuries he died you may find him guilty of the crime charged in the indictment."   By this statement the jury might well be misled.   By " premises " the court could not have meant the warehouse.   That had not been entered.   As has been said, the assault apparently took place on the public street.   If after the attempted burglary or larceny the conspirators " had been frightened away from the place of the

crime, had quit their felonious acts or attempt and were seeking to escape by running away upon the public streets, the death of a person seeking to capture them would not be the killing of a human being by a person engaged in the commission of a felony * * * ." (People v. Marwig, 227 N. Y. 382, 386.) They were further told that if there was no design between the parties to effect the death of the watchman at or before the time they entered the premises but that such intention was conceived after the time Collins encountered him and was attempting to escape from the premises and called for help that then you may find that this intention to escape was also a part of the conspiracy to burglarize the place, and you may find the defendant guilty as charged in the indictment, because if there was a general resolution entered into at any time before the conspiracy was carried out, and while an attempt was made to commit the crime they had conspired to commit, if at any time up to then there was a general resolution to resist all attempts to detain or hold in custody any of the parties, all the persons present when the homicide was committed were equally guilty as the men who did the actual striking. Again, if Collins, while attempting to escape, was caught and beaten by the watchman, that he then cried for help and as a result his associates attacked the watchman the jury might infer that the conspiracy involved the idea that they would protect each other. This is an erroneous statement of the law. "It is undoubtedly possible for parties to combine in order to make an escape effectual, but no such agreement can lawfully be inferred from such a combination to do the original wrong." (People v. Marwig, *supra,* 390.) The mere call for help was not sufficient to justify a departure from this rule. Further the charge ignores the fact that if the felony was ended there could be no conviction under this indictment.

Later they were told that if they find that the defendant while attempting to escape from the commission of a felony with the aid and assistance of others and acting in concert with

others struck Michael Connors on the head with some instrument, as a result of which Connors died, they should not hesitate to find the defendant guilty of the crime charged in the indictment. Again the indictment is ignored. And in any case under the circumstances supposed there could be no conviction without a finding of intent and of premeditation and deliberation. It is not claimed that these issues were submitted to the jury.

There was also certain incompetent evidence admitted over the objection of the defendant. Some time after March 1st he and various of his associates were arrested. While under arrest he was questioned by the district attorney at times alone, at times in the presence of the other prisoners. One of these prisoners was a man named Merrell, who was the captain of the barge on the night in question. The stenographer who took the examination was allowed to testify as to much of what Merrell said in the presence of Collins. Collins was asked if he remembered denying he was present when the old man was attacked. He did not answer and the stenographer stated that Merrell broke in with " No, no, he was there. He said so himself." Collins had stated that he did not see why his companions should commit the assault on his account. A statement immediately made by Merrell was admitted " that is the reason they hit him, because he hit Collins, he said so." The stenographer also gave a long account by Merrell of what Collins had told him with regard to the circumstances of the assault, ending with " He yelled and they jumped to Collins' assistance." It is perfectly true that it is competent to give evidence as to statements of others in the presence of the accused when they are of such a kind and made under such circumstances that they properly and naturally call for an answer—where silence may be taken for an admission. If he is silent when he should have denied, the presumption of acquiescence arises. (People v. Koerner, 154 N. Y. 355, 374; People v. Kennedy, 164 N. Y. 449, 456; People v. Wenner-

holm, 166 N. Y. 567, 577; People v. Smith, 172 N. Y. 210, 231; People v. Conrow, 200 N. Y. 356, 367.) But the testimony here is justified by no such rule. Collins had already told his story. He had already contradicted the statements made. Under such a state of facts the failure to renew his denial was no indication of acquiescence in any event. Nor were the statements such as naturally called upon him for an answer. The testimony should not have been received.

Collins may or may not have been guilty of the crime charged against him. Whether guilty or not he was entitled to a fair trial. This he did not receive and the judgment of conviction appealed from must be reversed and a new trial must be granted.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur.

Judgment of conviction reversed, etc.