Gabrielli, J.
We consider for the first time[1] the effect of the Criminal Procedure Law provision (CPL 700.65, subd 4) requiring retroactive judicial amendment of an eavesdropping warrant prior to the admission at trial of an intercepted "communication which was not otherwise sought”, in the original warrant. Present also are questions whether evidence other than statistical data suffices to establish that an eavesdropping warrant was executed in such a manner so as to minimize the interception of communications not otherwise sought to be intercepted and, additionally, whether the revised Penal Law (L 1965, ch 1030) defining an attempt to commit a crime (Penal Law, § 110.00) changed the rule of People v Rizzo (246 NY 334, 337) that the prosecution must establish that defendant was "very near to the accomplishment of the intended crime”.
Following jury verdicts upon which defendant was convicted of conspiracy in the second degree (Penal Law, § 105.10) and attempted robbery in the second degree (Penal Law, §§ 110.00, 160.10), he was sentenced to concurrent indeterminate terms of imprisonment not to exceed three years. A divided Appellate Division reversed and held that certain electronic eavesdropping evidence should have been suppressed and, further, that the evidence adduced on the attempted robbery charge was insufficient to establish the commission of that crime. Pursuant to leave granted by the Chief Judge of this court, the People appeal.
*644 On the basis of undercover surveillance conducted by New York City police officers and in furtherance of "an investigation into several organized crime figures who were operating in New York County”, the District Attorney obtained an eavesdropping warrant which authorized interception of conversations by electronic means over a telephone located in Jimmy’s Lounge, a bar in Manhattan. The warrant, dated February 3, 1972, permitted the interception of conversations involving five named individuals, and concerning crimes related to bookmaking, gambling and extortion.
The original warrant was renewed on March 8, April 7 and finally, on May 5, 1972. With each renewal, the scope of the warrant was expanded, eventually including additional criminal activity of other named individuals and certain telephones. As a result of this electronic surveillance effort, an extensive criminal investigation was launched and targets thereof were subsequently convicted of such crimes as extortion, theft of securities, counterfeiting, narcotics trafficking, attempted murder, loansharking, theft of airline tickets, perjury and contempt. Up to the time of the grant of the May 5 amendment neither this defendant nor the crimes of robbery or conspiracy to rob were within the scope of the warrant or the amendatory orders.
On April 6, the day before the second renewal period ended, police officers overheard a brief conversation between defendant and another individual, later identified as A1 Fristachi, an employee of a New York City ticket agency. However, the electronic recording device, which was designed to become activated whenever the tapped receiver was lifted, apparently malfunctioned causing the first portion of the conversation to be unrecorded. Nonetheless, the monitoring officer listened to the conversation and was later able to state, with respect to the unrecorded segment, that Fristachi advised defendant "that an unknown male picked up envelopes all over town and he wanted [defendant] to watch the guy”. The officer further indicated that the sum and substance of the conversation was that Fristachi wanted defendant "to clock” the messenger. At this point in the conversation, the malfunction was discovered and corrected, the recorded portion adding only that defendant and Fristachi agreed that it was better that they talk "when they see each other”.
Apart from the call being logged in the daily "plant” report (a summary of all overheard conversations) the record does *645 not reveal any further action taken by the authorities with respect to this conversation.
Subsequently, on April 17, during the third renewal period, the officers overheard four more conversations involving defendant. In the first two conversations defendant spoke with his cousin who apparently relayed, in a somewhat obscure fashion, information from Fristachi that the messenger was just starting his rounds and would "wind up” at the Commodore Hotel; the defendant then agreed to meet with his cousin at Jimmy’s Lounge. A third conversation between defendant and his girl friend, made at 11:15 a.m., corroborated the inference from the first two conversations that something may have been afoot that day.
Acting upon the information garnered from these conversations, undercover officers placed defendant under visual surveillance. Shortly thereafter defendant was observed leaving Jimmy’s Lounge with a companion, arriving at the Commodore Hotel a few minutes after 1:00 p.m. The pair left the area at 1:15 p.m., without engaging in any criminal acts. It appears that the messenger, who defendant "clocked”, had left the Commodore Hotel just prior to the arrival of the defendant and his companion.
The fourth and final conversation overheard took place later that afternoon, and in which defendant revealed that they had missed seeing the messenger but that they were going to try again at a different location.
On May 5 the final application to renew and amend the original warrant was granted. In addition to detailing the discovery of other crimes allegedly committed by the targets of the investigation, the order incorporated the new crimes of robbery and conspiracy to rob, and defendant’s April 17 conversations, which were capsulized in the application. While the April 6 conversation was not specifically mentioned, the daily plant report which summarized that conversation was submitted to the court as a part of the application and, in a separate paragraph, was referenced to the evidence of new criminal activity described in the warrant.
The disclosure and use of eavesdropping information not otherwise sought in an eavesdropping warrant is governed by CPL 700.65 (subd 4) which provides:
"4. When a law enforcement officer, while engaged in intercepting communications in the manner authorized by this *646 article, intercepts a communication which was not otherwise sought and which constitutes evidence of any crime that has been, is being or is about to be committed, the contents of such communications, and evidence derived therefrom, may be disclosed or used as provided in subdivisions one and two. Such contents and any evidence derived therefrom may be used under subdivision three when a justice amends the eavesdropping warrant to include such contents. The application for such amendment must be made by the applicant as soon as practicable. If the justice finds that such contents were otherwise intercepted in accordance with the provisions of this article, he may grant the application.”
At the suppression hearing, the sole witness was the Assistant District Attorney who was in charge of the tape monitoring operation. He briefly described the obtaining of the warrants, as well as the renewals and amendments. He testified that the monitoring officers were instructed that "If the conversation of the parties, or the substance was not relevant, or not included in the order, they were to immediately discontinue the electronic surveillance,” and, further, that if "the parties were not named in the order but it was clear from the beginning of the conversation that the conversation involved a crime or was related to a crime, [sic] they were to record the conversations and to immediately report to me that fact so that a suitable amendment could be made to the order”. Additionally, he stated that in no event were the officers to monitor legally privileged communications. The officers were also required to make daily plant reports, setting forth the substance of all monitored conversations, which the Assistant District Attorney reviewed each day.
The defendant chose not to present any witnesses, although it was announced that the monitoring police officers were present and available to testify.
Upon the termination of the hearing defense counsel mentioned that CPL 700.65 (subd 4) requires that an application for amendment be made "as soon as practicable”, but it does not appear that his application for suppression was predicated on that ground. Nor, did his cross-examination of the sole witness or, for that matter, any suppression hearing testimony, touch upon the timeliness of the amendment application. Hence, it does not appear that the court’s attention was directed to that subject and any claim relating thereto, if such *647 there be, is deemed to be waived (People v Pobliner, 32 NY2d 356, 367, cert den 416 US 905).
The Appellate Division held that the trial court erred in denying the suppression motion, and reasoned that the April 6 conversation "alerted” the District Attorney to the plans for the robbery and, thus, it could not be said that the April 17 conversations were unexpectedly overheard; and, further, that "[t]o allow testimony as to the contents of such communications (and with respect to the evidence derived therefrom) when the evidence was intentionally obtained, without prior court scrutiny, would permit the District Attorney, in his own discretion to expand the entire scope of the eavesdropping warrant, and to thereafter legitimize such action by a subsequently obtained court order”, and "if it is interpreted in that manner there would be grave doubt as to its constitutionality” (45 AD2d 56, 60-61). We cannot agree with this hypothesis.
Initially, it should be pointed out that CPL article 700 and its Federal counterpart, title III of the Omnibus Crime Control and Safe Streets Act of 1968 (US Code, tit 18, § 2510 et seq.), have consistently withstood constitutional attack (United States v Sklaroff, 506 F2d 837, cert den 44 US Law Week 3205; United States v Ramsey, 503 F2d 524, cert den 420 US 932; United States v James, 494 F2d 1007, cert den 419 US 1020; United States v Tortorello, 480 F2d 764, cert den 414 US 866; United States v Bobo, 477 F2d 974; United States v Cafero, 473 F2d 489, cert den 417 US 918; United States v Cox, 462 F2d 1293, cert den 417 US 918; United States v Cox, 449 F2d 679, cert den 406 US 934). In the last-cited case the constitutionality of subdivision (5) of section 2517 of title 18 of the United States Code, [2] which is substantially identical to CPL 700.65 (subd 4), was sustained, the court commenting that: *648 Berger v. New York [388 US 41], and we do so upon the basis that the nature and probable consequence of authorized wiretapping is discovery of unanticipated and undescribed communications. The very nature of this form of invasion is conducive to producing unexpected information. If wiretapping is to be validated, and Berger, Osborn [v United States, 385 US 323] and Katz [v United States, 389 US 347] recognize its validity, then the interception and use of information which is so related to the original search is not to be excluded. In other words, Congress has dealt with the problem about as well as could have been expected considering the nature and character of the subject matter and its consequential incidents.” (449 F2d, at p 687.)
*647 "[W]e uphold the statute on the basis that it demands an original authorization in accordance with the mandate of
*648 By enacting CPL 700.65 (subd 4) the Legislature obviously intended to engraft the "plain view” exception (People v Spinelli, 35 NY2d 77, 80-81; Coolidge v New Hampshire, 403 US 443) upon the general constitutional requirement that seized evidence must be particularly described in the application for a warrant (see Report of Commission on Revision of the Penal Law and Criminal Code, McKinney’s 1968 Session Laws, Memorandum, pp 2293, 2296). Since eavesdropping warrants are based on substantially the samé principles applicable to search warrants for physical evidence (see Berger v New York, 388 US 41, 53-60, supra) and, inasmuch as evidence not described but discovered in the course of a lawful search is under certain circumstances admissible (Spinelli, supra; Coolidge, supra), it seems only logical for the Legislature to have intended that intercepted communications be treated similarly.
Only recently in People v Spinelli (35 NY2d 77, supra) we had occasion to comment upon the principles applicable to the admission of evidence under the "plain view” doctrine. There, we noted that the mere fact that an article is left in plain view does not mean that it is subject to unlimited search and seizure. Rather, there are at least two notable restrictions on the scope of the doctrine. One is that the existence of an object in plain view alone is not enough, in and of itself, to justify a warrantless search and seizure. The other requirement is "that the object must have come into plain view inadvertently (Coolidge, supra, p. 466). If the ’discovery is anticipated’ (p. 470) * * * the warrantless search must fall” (Spinelli, supra, p 80).
It is urged that based upon the "second” requirement, we *649 should conclude that the April 17 conversations were not inadvertently discovered and thus should have been suppressed since, as defendant asserts, the April 6 interception "alerted” the authorities to the conspiracy. The argument fails, however, it being based on a misunderstanding of the "inadvertence” requirement. That requirement is intended to protect citizens against anticipated discoveries, such as occurred in Spinelli, where, knowing the location of certain tangible evidence and with ample time to obtain a warrant, law enforcement officers intruded into the privacy of the accused without obtaining a prior judicial determination of probable cause to enter upon the premises. Here, in contrast, neither the April 6 nor the April 17 conversations could have been foreseen and, thus, were not proscribed anticipated discoveries. While it may be true that after April 6 the authorities knew of defendant and even may have entertained questionable suspicions as to his plans, nevertheless, on the basis of the April 6 conversation alone, the authorities lacked probable cause to seek amendment of the warrant to include either the crimes of robbery or conspiracy to rob, or to even name the defendant or his cohort. Indeed, the police had no grounds upon which they could reasonably have asserted that defendant would use the Jimmy’s Lounge telephone again. We conclude, therefore, that the April 17 conversations were inadvertently overheard and, thus, were discovered in "plain view”.[3]
Were we to conclude otherwise, and adopt the contrary interpretation urged upon us by defendant, unintended results would certainly follow. Assume, for example, that upon being informed of the inadvertent interception of a coded but suspicious conversation, the District Attorney takes no steps to obtain amendment of the original warrant because, at that time, he lacks probable cause to believe a crime has been committed. However, the code is subsequently broken by interpreting a later accidentally discovered conversation and it is now evident that the earlier conversation detailed a criminal conspiracy. In such circumstances, it cannot possibly be, as defendant suggests, that this patently constitutional investigatory scheme was intended to curtail the admissibility of such incriminating evidence. Indeed, the legislative history of the Federal retroactive warrant amendment statute, upon *650 which New York’s was based, leads to the opposite conclusion. Rather than aiming at curtailment of the evidence sought to be admitted, it is apparent that the statute was adopted to insure that the original order was lawfully obtained and continued, that the inadvertent interception was overheard in good faith, and that the interception was in fact inadvertent (2 US Code Congressional & Administrative News, p 2189 [1968], quoting Senate Report 1097, 90th Cong, 2d Sess 12 [1968]). Hence, retroactive amendment is required to insure continuing good faith compliance with the original warrant and not to circumscribe the trial use of properly, though accidentally, overheard incriminating conversations.
Directing attention to the judicial amendment requirements of the second sentence of CPL 700.65 (subd 4), defendant contends that the April 6 conversation should have been suppressed because the People failed to obtain judicial amendment of the original warrant to permit its admission and, further, that the April 17 interceptions should have been suppressed as "evidence derived therefrom”. We cannot agree. While the amending order of May 5 and the supporting affidavit did not expressly recount the April 6 conversation, nonetheless, that conversation was set forth in the daily plant reports which were a part of the application before the court and, significantly, in the same paragraph describing the evidence of new criminal activities for which the amendment was sought, the affidavit referred the court to the daily plant reports. As has been held in strikingly similar circumstances:
"Neither the New York statute nor the [Federal] Act requires the issuing judge to announce formally in open court that he has noticed the interception of evidence not covered by the original order and has determined that it was properly obtained. It is enough that notification of the interception of evidence not authorized by the original order be clearly provided in the renewal and amendment application papers. A judge presumably will scrutinize any application and will scrupulously impose the restrictions required by statute. The orders here, by referring to the affidavits for a description of offenses and communications to be intercepted, were amended as the contents of the affidavits changed.” (United States v Tortorello, 480 F2d 764, 783, supra.)
We hold, therefore, that the amendment requirements were satisfactorily met.
It is not without significance that the challenged intercep *651 tions fall within the statutory requirement that they be "not otherwise sought”. Communications are "sought” within the context of CPL article 700 (encompassing CPL 700.65, subd 4) where the warrant, or the application therefor, contains "a particular description of the type of communications sought to be intercepted” (CPL 700.20, subd 2, par [b], cl [in]; CPL 700.30, subd 4). Since neither the warrant nor the application and renewal applications submitted prior to the May 5 amendatory order contained a description of the type of communication intercepted, that is, of a robbery conspiracy, it must be concluded that the April 6 and April 17 communications were "not otherwise sought”. Moreover, this conclusion is in accord with our determination in People v Gnozzo (31 NY2d 134, 144) where we held that "the legislative intent was to require amendments where different crimes are disclosed”, and is reinforced by the memorandum of the Commission on Revision of the Penal Law and Criminal Code which most appropriately pointed out that the predecessor statute of CPL 700.65 (subd 4) (Code Crim Pro, § 822) was intended to apply "where, in the course of executing a valid eavesdropping warrant (which authorizes, of course, the overhearing of a particularly described conversation), the applicant or his designated agent unexpectedly overhears an incriminating conversation that is totally unrelated to the crime for which the warrant was issued” (emphasis added; McKinney’s 1968 Session Laws of New York, Memorandum, pp 2293, 2296, quoted in People v Gnozzo, 31 NY2d 134, 143, supra).
Defendant also urges, unconvincingly we think, that adequate minimization requirements were not met—a matter not considered by the Appellate Division. Minimization requirements are detailed in CPL 700.30 which provides that each "eavesdropping warrant must contain: * * * 7. A provision that the authorization to intercept * * * shall be conducted in such a way so as to minimize the interception of communications not otherwise subject to eavesdropping under this article, and must terminate upon attainment of the authorized objective.” It cannot be disputed that each warrant contained the requisite minimization requirements.
Specifically, defendant posits his claim on United States v Bynum (I) (475 F2d 832) and asserts that the People failed to sustain the burden of demonstrating compliance with the statutory requirements because statistical data setting forth the number of communications intercepted and the number *652 overheard were not presented at the suppression hearing. The argument lacks merit. It is the accused, not the People, who must shoulder the burden of persuasion on a motion to suppress evidence (People v Berrios, 28 NY2d 361, 367 [and cases cited there]; Nardone v United States, 308 US 338, 341). The People have only the burden of going forward to show the legality of the police conduct in the first instance (People v Whitehurst, 25 NY2d 389, 391; People v Malinsky, 15 NY2d 86, 91, n 2). While statistical evidence may, and often will, be of assistance, and perhaps in some instances dispositive (see United States v Bynum [II], 485 F2d 490), no reason is offered, as indeed there cannot be, why testimonial evidence alone is inadequate to sustain the prosecution burden. The case at bar is a paradigm. The People went forward in the first instance and offered testimonial evidence that adequate minimization instructions were given to the monitoring officers. In addition, the defense was notified that these officers were present and available to be examined under oath; and, as indicated, the defense did not avail itself of the proffered opportunity to counter the People’s evidence nor did it offer any rebuttal testimony. In these circumstances, it may not be concluded that statistical evidence of compliance is necessary.[4] We hold, therefore, that the hearing court was empowered to conclude that the People offered sufficient evidence to sustain their burden.[5]
Finally, we agree with the Appellate Division that the trial evidence was insufficient to sustain the conviction of attempted robbery in that the evidence did not establish that defendant was "very near to the accomplishment of the intended crime” (People v Rizzo, 246 NY 334, 337, supra). The revised Penal Law definition of the crime of attempt (Penal Law, § 110.00)[6] did not change the Rizzo rule. The legislative history of the statute clearly points to this conclusion (Commission Staff Comments, 1971 Gilbert Criminal Law and *653 Procedure, p 2-322; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 110.00, p 309). Thus, we reaffirm the Rizzo rule and hold that the attempted robbery charge was properly dismissed.
Accordingly, the order of the Appellate Division should be modified by reversing so much thereof as granted the motion to suppress and reversed defendant’s conviction for conspiracy in the second degree, and the case should be remitted to the Appellate Division for review of the facts (CPL 470.40, subd 2, par [b]) and, as so modified, affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order modified and the case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

. In People v Gnozzo (31 NY2d 134, 143) we held the amendment required by CPL 700.65 (subd 4) inapplicable to cases ”[w]here the communication intercepted involves the crime specified in the warrant, the named suspect, and an unknown outside party”.

. United States Code (tit 18, § 2517, subd [5]) reads: "(5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

. (See Comment, 61 Cornell L Rev 92, 127-128, n 174.)

. See United States v Rizzo (491 F2d 215, 217-218) where, on appeal by the targets of the electronic surveillance, it was held on almost identical suppression hearing testimony that there was sufficient evidence of compliance. Notably, in the course of that opinion the Bynum (I) decision was found distinguishable by the court which authored it (p 218).

. We intimate no view, of course, as to the weight or credibility of the suppression hearing testimony.

. Penal Law (§ 110.00) reads: "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime”.