Wachtler, J.
A jury found the defendants guilty of attempted robbery in the second degree (Penal Law, §§ 110.00, 160.10) and unlawful possession of a weapon as a misdemeanor (Penal Law, § 265.05, subd 9). The Appellate Division *297 held that the evidence is insufficient to sustain the convictions and the People have appealed. The primary question is whether there is sufficient evidence from which the jury could conclude, as they did, that the defendants acted with intent to commit a robbery.
The main witness for the prosecution was Freddie Starks, who owned and operated a stationery store located at the corner of Foch Boulevard and 143rd Street in Jamaica. He testified that he and his employee were alone in the store when the defendants entered on September 13, 1973 at approximately 2 o’clock in the afternoon. According to Starks the defendants "looked around” and then one of them bought 2 cents worth of candy. Starks’ employee took the money, deposited it in the cash register and the defendants left. Starks saw them pass in front of his window along 143rd Street and disappear from sight behind the store’s partition. Then they "came back again”, turned around and went back up 143rd Street.
This time Starks went to a telephone booth next to the window and watched them as they walked toward a green Pontiac parked about 30 feet away on 143rd Street. He noticed that the car had no license plate. Starks saw Bracey, who was carrying a white canvas shoulder bag, enter the car. As Foster-Bey leaned over, and partially entered the car, Bracey handed the shoulder bag to him. Foster-Bey then stepped out of the car and Bracey drove off. Starks watched as Bracey made a U-turn, passed the store and proceeded across Foch Boulevard.* Meanwhile Foster-Bey started back toward the store with the canvas bag over his shoulder.
Starks called the police "while all this was going on.” He then went outside where he found Foster-Bey standing in front of the store on Foch Boulevard. As Starks "looked up the block” he once again saw the green Pontiac, this time parked on Foch Boulevard near the corner of 142nd Street. Starks returned to the store, sat on some newspapers and continued to watch through the glass in the front door.
After two or three minutes, Foster-Bey started toward the door. Starks noticed that as Foster-Bey reached for the door with his left hand, he put his right hand into the shoulder bag *298 and withdrew a black object resembling a pipe. Then, just as Foster-Bey opened the door and placed his foot inside the store, with the object in his hand, Starks heard car motors and tires screeching. Foster-Bey immediately backed out of the store, replaced the object in the bag and stood on the sidewalk with his back to the door. Starks spoke briefly to the police who then went over to Foster-Bey and frisked him. The police found a pellet pistol in the canvas bag. The pistol, which resembled a .38 caliber revolver, was fully loaded and, according to a ballistics test conducted prior to trial, the gun was functional. There was nothing else in the bag.
Fifteen or 20 minutes after Foster-Bey was taken into custody, Starks saw Bracey drive past the store in the green Pontiac. This time the car had a license plate on it and was proceeding on Foch Boulevard toward Sutphin Boulevard. Shortly after that the car passed the store again proceeding in the same direction. Starks saw Bracey make a left turn onto 143rd Street and then another left onto 116th Road. Soon after that Bracey came up to Starks on foot and asked "What happened? What’s going on?” Starks replied, "Nothing.” Bracey walked away toward 116th Road and about a minute or a minute and a half later drove past the store in the Pontiac on 142nd Street, "going toward Rockaway Boulevard.”
At this point a police car, responding to the earlier report, arrived at the store. Starks pointed out the Pontiac and Bracey was arrested. A police officer who inspected the car said that the screws on the license plate were "hand-loose. I could move the screws with my fingers.” Finally Starks identified both defendants at the scene and at the trial and testified that he had never seen either of them prior to this incident.
Neither defendant had made any statement at the time of arrest. However at the trial Bracey took the stand and testified that he had gone to a Manhattan union hall looking for work on the morning of September 13, 1973. He arrived home in Jamaica at about 11:00 a.m. He left again at approximately 2:15 in the afternoon and proceeded to an auto supply store on Rockaway Boulevard to buy a battery cable. On the way over he passed Starks’ candy store and on the return trip he stopped for a soda at approximately 2:30.
According to Bracey, when he approached the store "Mr. Starks was standing on the corner, and he kept looking at me over his glasses, you know * * * so I said 'what’s happening?’ ” but Starks "said nothing.” After he bought the *299 soda he returned to the car, which was "Right in front of the store”, got in and "went straight down Foch.” But when he looked in the rear view mirror, he saw "a radio car with a light on” so he pulled over and stopped. He was frisked by the police and was taken back to the store "where something had happened. They told me I looked like somebody.” He also testified that the green Pontiac was his father’s car but Bracey himself had originally installed the license plates with a screwdriver in the spring of 1973. They were securely fastened on the date of his arrest. He admitted that he had seen Foster-Bey "in the neighborhood” before that day, but was not a friend or a "buddy”. He denied conspiring with him, or anyone, to commit a robbery and denied handing him a bag with a pellet gun.
As indicated, the jury, found the defendants guilty of attempted robbery in the second degree and unlawful possession of a weapon as a misdemeanor. The Appellate Division reversed and dismissed the indictment because in their view the evidence did not clearly establish the defendants’ intent. With respect to the attempted robbery conviction they held that the evidence "does not clearly show” that the defendants "intended to rob the complainant. Their acts * * * were consistent with the crimes of attempted menacing and attempted assault, as well as attempted robbery.” As regards the weapons charge, they found that there was no testimony that anyone had seen either defendant "with the pellet gun in his hand, poised in a manner implying the intent to use it in a criminal manner.” Thus they held that the People had not established that the defendants possessed the gun "with intent to use the same unlawfully against another” as is required by the statute (Penal Law, § 265.05, subd 9).
Section 110.00 of the Penal Law states that "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.” Essentially then, an attempt is an act done with an intent to commit some other crime (see, e.g., People v Moran, 123 NY 254, 257). The theory is that although the defendant may have failed in his purpose, his conduct is nevertheless culpable and if carried far enough causes a sufficient risk of harm to be treated as a crime in itself (see, e.g., Hall, Criminal Attempt—A Study of the Foundations of Criminal Liability, 49 Yale LJ 789, 816). The defendants’ criminal responsibility is less than, but necessarily *300 dependent upon, the crime he has attempted to complete (Penal Law, § 110.05).
Thus it must first be established that the defendant acted with a specific intent; that is, that he intended to commit a specific crime (see, e.g., People v Kane, 161 NY 380). "It is not enough to show that the defendant intended to do some unspecified criminal act” (La Fave & Scott, Criminal Law, § 59, p 429). Secondly it must be proven that the defendant acted to carry out his intent. The law does not punish evil thoughts (People v Sullivan, 173 NY 122, 133; see, also, Holmes, The Common Law, p 65), nor does it generally consider mere preparation sufficiently dangerous to require legal intervention (People v Sullivan, supra; People v Collins, 234 NY 355; People v Werblow, 241 NY 55; People v Rizzo, 246 NY 334). The statute requires that there be "conduct which tends to effect the commission of’ the crime contemplated (Penal Law, § 110.00). The act need not be "the final one towards the completion of the offense” (People v Sullivan, supra, at p 133; see, also, Model Penal Code, § 5.01 [Tent Draft No. 10], p 39), but it must "carry the project forward within dangerous proximity to the criminal end to be attained” (People v Werblow, supra, at p 61; People v Ditchik, 288 NY 95, 96; People v Rizzo, supra; People v Di Stefano, 38 NY2d 640).
On this appeal we are concerned with the first element; whether there was sufficient evidence that the defendants intended to commit a robbery. If this was their intent, it is not disputed that their actions at the scene clearly demonstrated that they came dangerously close to their goal.
This poses an unusual problem. In most attempt cases, the defendant’s actual intent or purpose is not in issue and the only questions are whether he committed an overt act which went beyond the stage of mere preparation (People v Sullivan, supra; People v Collins, supra; People v Werblow, supra; People v Rizzo, 246 NY 334, supra; People v Mirenda, 23 NY2d 439; People v Di Stefano, supra) or whether it was impossible to accomplish the act intended (People v Moran, 123 NY 254; People v Gardner, 144 NY 119; People v Jaffe, 185 NY 497; People v Teal, 196 NY 372, but now see Penal Law, § 110.10). Legal comment usually focuses on the same points (see, e.g., Model Penal Code § 5.01, Comments [Tent Draft No. 10], pp 24-75; Perkins, Criminal Attempt and Related Problems, 2 UCLA L Rev 319; Ryu, Contemporary *301 Problems of Criminal Attempts, 32 NYU L Rev 1170; Sobel, Inchoate Crimes, 32 Brooklyn L Rev 257, 268-269; La Fave, op. cit., § 59). Thus far we have not had to consider the sufficiency of the evidence of intent principally because there has been an admission by the defendant or an accomplice that the act was done with a specific criminal purpose (but see People v Sobieskoda, 235 NY 411, and People v Levan, 295 NY 26, where the intent was not conceded, but the reversal was based on an error in the charge). The issue however has occasionally been raised in other jurisdictions (see, e.g., People v Nichols, 255 Cal App 2d 217; Thompson v State, 5 Md App 191; Hines v Texas, 458 SW2d 666 [Tex]; Larsen v Nevada, 86 Nev 451; State v Powell, 277 NC 672) and the lower courts of this State (People v Bauer, 32 AD2d 463, affd without opn 26 NY2d 915; People v Sanders, 38 AD2d 877; see, also, La Fave, op. cit., p 429, n 80).
In some cases of course intent can be inferred from the act itself. In People v Moran (123 NY 254, 256-257, supra) for instance, where the defendant was seen in a crowded market "to thrust his hand into the pocket of a woman and to withdraw it therefrom empty” we noted in dictum that "It was plainly inferrable” that an intent "to commit larceny from the person existed”. But in many, if not most attempt cases, it will not be possible to look only at the act and its "natural consequences” to discover intent "since by definition of a criminal attempt the ultimate consequences do not ensue” (Skilton, Mental Elements in a Criminal Attempt, 3 U of Pitt L Rev 181, 182). Thus in the case now before us the fact that Foster-Bey entered a stationery store with a gun in his hand does not unequivocally establish that he intended to commit a robbery. He might have intended, as the Appellate Division noted, to assault or menace the owner, or he might have had an innocent purpose in mind. The act does not speak for itself, as it rarely will in the case of criminal attempt.
But intent can also "be inferred from the defendant’s conduct and the surrounding circumstances” (La Fave, op. cit, p 429, n 80) and "indeed this may be the only way of proving intent in the typical case” of criminal attempt (see Model Penal Code, § 5.01, Comments [Tent Draft No. 10], p 28). The question then is whether the jury, considering the act and all the surrounding circumstances, could conclude that there was no reasonable doubt that these defendants acted with an intent to rob the store.
*302 The evidence, of course, must be viewed in the light most favorable to the People, since we must assume from the conviction that the jury credited the People’s proof (see, e.g., People v Benzinger, 36 NY2d 29). No one seems to dispute the fact that the evidence submitted by the prosecutor shows that the defendants intended to commit some type of crime. Their conduct obviously fits a familiar pattern common to robberies. The evidence shows that they came to a commercial establishment armed with a gun concealed in a bag, driving a car which could not be easily traced because of a missing license plate. They came in together, looked around and made a token purchase, Outside they exchanged the bag and split up. Bracey drove the car around the block and parked down the street from the store. Foster-Bey stationed himself outside and then proceeded into the store with the gun drawn and only withdrew when the police arrived. Under all the circumstances the jury could well find that the defendants, who acted together throughout, had reconnoitered the store and returned to rob it. In fact the only thing that could have made this intention plainer was an actual demand for money.
The defendants urge however that their conduct is equally consistent with an intent to assault or menace. This of course is a possibility, but the jury was entitled to conclude that it was not a reasonable possibility under the circumstances. According to Starks’ testimony, he did nothing which could provoke an assault, and he had never had any contact with either defendant prior to the incident. In order to find that the defendants intended a personal assault or menace under these circumstances, the jury would have to resort to sheer speculation.
Since we have found that the evidence is sufficient to establish the defendants’ intent to commit robbery, it follows that the jury could also find that the defendants possessed the weapon "with intent to use same unlawfully against another” (Penal Law, § 265.05, subd 9).
Accordingly, the orders of the Appellate Division should be reversed, the convictions reinstated and the cases remitted to the Appellate Division for review of the facts.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Orders reversed and the case remitted to the Appellate *303 Division, Second Department, for further proceedings in accordance with the opinion herein.

 Starks testified that when the defendants were at the car, “There was also a third party in the car, but I couldn’t see his face.” However, he was certain that Bracey, “the shorter man” who had just entered the store with Foster-Bey, was driving when the car left. Apparently the "third party” was never identified.