OPINION OF THE COURT
Raymond E. Cornelius, J.
This case raises the interesting and novel question as to whether or not exigent circumstances will justify the warrantless seizure of an automobile, which has been rendered inoperable.
The defendant has been charged, in a six-count indictment with manslaughter in the second degree, criminally negligent homicide, and other alleged crimes involving the operation of his motor vehicle, in connection with injuries being inflicted upon two boys, one of whom died, as the result of being struck by an automobile on, or adjacent to, a public road within the county. A short time thereafter, within minutes, the defendant was allegedly involved in a motor vehicle accident with another automobile, in the County of Monroe, an adjacent county, at which time the defendant was administered a breathalyzer test, and arrested by the Monroe County authorities in connection with that incident. Both the Wayne County and Monroe County incidents occurred on the evening of October 8, 1979, and *165 on October 10, 1979, the Wayne County Sheriff’s Department seized the defendant’s automobile, without a warrant, from the collision shop, to which it had been towed by the Monroe County Sheriff’s Department on October 8, 1979. The issue is raised, as the result of a motion made in accordance with CPL article 710, to suppress the evidence seized, and a hearing held thereon.
There is very little dispute, if any, concerning the facts surrounding the seizure of the automobile on October 10. On that date, former Chief Deputy Kise, who is now deceased, received certain information, via telephone, from the Monroe County Sheriff’s office. This information was relayed to Investigator Pierson, by Chief Kise, around noontime, and was to the effect, that the automobile which may have been involved in the Wayne County fatal accident could be located at a collision shop in Monroe County. At approximately 2:00 P.M., both Kise and Pierson proceeded to this collision shop, which was a private business, and, by means of driving the police vehicle through an open gate, entered a fenced area, in which the automobile in question was located and readily observable. At this point in time, the only information possessed by the Wayne County authorities consisted of the fact that the automobile, which was the object of their search as a result of the fatal accident, was dark colored, manufactured by Chrysler, and presumably, contained damaged or missing chrome in the front grille.
After driving into the afore-mentioned premises, Chief Deputy Kise entered the office of the collision shop, and after returning, he and Investigator Pierson made a visual inspection of the suspect automobile. Although no items were removed upon the initial inspection, it was apparent that the vehicle had sustained damage to the passenger side of the windshield, in which hair was embedded, and also to the front grille area. Investigator Pierson testified that, after his initial observations, he was “reasonably sure” that this was the same vehicle as involved in the Wayne County fatality, and furthermore, at some point, he became aware that this same vehicle had been involved in an accident in Monroe County within a short period of time after the Wayne County accident.
*166 Based upon the foregoing findings, the court concludes that prior to conducting their investigation at the collision shop, the Wayne County Sheriff’s Department did not have probable cause to believe that the defendant’s automobile, which was located at this business establishment, was the instrumentality involved in the Wayne County fatal accident, which had occurred several days earlier. However, upon conducting the initial visual observations, as described above, the court concludes that the two investigators did have probable cause.
At approximately 2:30 P.M., Investigator Pisciotti, who heads the Criminal Technicians Unit of the Wayne County Sheriff’s Department, arrived at the scene and made the same observations as the first two investigators, and also, a cloth impression on the bumper of the vehicle, which was similar in pattern to the pants worn by one of the victims. Therefore, he removed certain items from the exterior of the car, which consisted of pieces of the front grille, glass samples from the windshield, and hair found, both in the glass and molding. Under Investigator Pisciotti’s supervision, the car was subsequently towed to the Wayne County Sheriff’s office, and at approximately 5:30 P.M., paint samples were removed therefrom.
The vehicle in question had been towed to the collision shop, at the direction of the Monroe County Sheriff’s Department, on October 8, 1979, subsequent to the automobile accident which had occurred in Monroe County. The “Towed Car Report” indicates that the automobile could be released upon presentation of “proper papers”, and the Wayne County Sheriff’s Department gave the defendant herein a receipt, based upon the seizure of his motor vehicle, as above described, on October 10,1979. Therefore, this case does not present any issue regarding a possible inventory search, nor is the warrantless seizure sought to be justified on the basis of consent, given either by the defendant or a third party, such as the owner of the collision shop.
The court agrees with the position of defense counsel that this case does not involve the “plain view” doctrine. In order for that doctrine to be applicable, and a seizure of property legally justified, it is necessary that discovery of *167 the seized object must have been inadvertent and not planned or anticipated by the police. (People v Jackson, 41 NY2d 146; People v Di Stefano, 38 NY2d 640; People v Spinelli, 35 NY2d 77.) In the pending case, the investigation conducted at the collision shop was not inadvertent or accidental, and indeed, the investigators proceeded to that location for the express purpose of finding the vehicle in question. Nevertheless, the court does not believe that the “plain view” doctrine is determinative of the issues in this case.
First, the court finds that the seized vehicle was found upon commercial premises, open to the public, and there was no expectation of privacy on the part of the defendant. (People v Buggenhagen, 57 AD2d 466.) In this regard, it should be noted that the vehicle had been towed to this business establishment by the Monroe County Sheriff’s Department two days earlier, and thereafter, allowed to remain there by the defendant, who was given a receipt, which he acknowledged, some time after the vehicle had been impounded by the Wayne County Sheriff’s Department. Therefore, the court finds and concludes that the authorities were lawfully on the premises when they made the above-described observations and seized the vehicle.
Secondly, upon making the initial observations, the investigators had probable cause to believe that the vehicle had been used in the commission of the vehicular homicide and, together with the items found thereon, constituted evidence that the operator of the vehicle had been involved in the commission of the alleged offense. Although the procurement of a search warrant would generally be required, based upon this probable cause, a warrantless seizure of the automobile would be justified based upon exigent circumstances. (Chambers v Maroney, 399 US 42; People v Jackson, 41 NY2d 146; People v Buggenhagen, supra.) In fact, the court believes that the facts in the pending case are virtually indistinguishable from the factual situation in People v Buggenhagen (supra), and, accordingly, is bound by the decision in that case. The only real difference between the two cases is the fact that in the instant proceeding the automobile was inoperable. Investigator Pise *168 lotti, for instance, testified that there was sufficient damage to the hood and radiator area to render the vehicle inoperable under its own power, and therefore, a tow truck was utilized to remove the vehicle to the Wayne County Sheriff’s Department. Similarly, however, there was nothing to prevent the defendant from removing the automobile in the same manner, or for that matter, to make temporary repairs in order to remove the vehicle under its own power.
As observed by the Court of Appeals in People v Jackson (supra), there is no “automobile exception” to the general rule requiring the police to obtain search warrants. Nevertheless, most of the cases, in which exigent circumstances have justified a warrantless seizure, have involved automobiles. Automobiles, by their very nature, have wheels, which render them mobile, by either their own power or by some other means. It is interesting that the Supreme Court, citing its own decision in Carroll v United States (267 US 132, 153), recognized the inherent differences between the search of a structure and the search of a “ship, motor boat, wagon (emphasis added) or automobile”. (Coolidge v New Hampshire, 403 US 443.) In addition, the items taken from the exterior of the car, such as the hair, glass particles and grille parts, were easily removable and could be destroyed or secreted. As in the fact pattern described in People v Buggenhagen (supra), the investigators were able to match the grille pieces found at the scene of the accident with those taken from the vehicle.
For the foregoing reasons, the court concludes that the seizure of the defendant’s vehicle, and other items removed therefrom, constituted a lawful seizure, and were not violative of any constitutional right. It is, therefore,
ordered that the motion to suppress is in all respects denied.
This shall constitute the decision and order of the court.