[Cite as *State v. Johnson,* 196 Ohio App.3d 338, 2011-Ohio-2653.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| THE STATE OF OHIO, | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Appellee, | Hon. John W. Wise, J. |
| | Hon. Julie A. Edwards, J. |
| v. | |
| JOHNSON, | Case No. 10 CA 98 |
| Appellant. | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common Pleas, Case No. 09 CR 935H

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    May 31, 2011


James J. Mayer Jr., Richland County Prosecuting Attorney, and Andrew M. Kvochick, Assistant Prosecuting Attorney, for appellee.

Patricia O'Donnell Kitzler, for appellant.


WISE, Judge.

{¶ 1} Appellant, Nayyohn K. Johnson, appeals his conviction and sentence entered in the Richland County Court of Common Pleas on one count of tampering with

evidence, one count of tampering with records, and one count of identity theft, following a jury trial.

{¶ 2} Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶ 3} In the early morning hours of September 3, 2009, the Mansfield Police Department stopped appellant in his Chrysler 300 for having no front license plate and no illumination on his rear license plate. Appellant was found to be driving under suspension and was arrested. A 16-year-old female was a passenger in appellant's vehicle. She was found to have consumed alcohol and was returned to her mother. With no one at the scene to drive the car, it had to be towed. Pursuant to Mansfield Police Department policies, Sergeant Doug Noblet and Officer Nelson Kilgore conducted an inventory search of the vehicle. As a result of the search, the officers discovered what was later determined to be 55.46 grams of powder cocaine in the sunglasses compartment of appellant's car, near the seat where appellant had been sitting.

{¶ 4} After appellant's arrest, the Richland County prosecuting attorney received a notarized statement from a person claiming to be Andre Martin and professing to be the owner of the drugs in question.

{¶ 5} Upon receipt of the statement, Assistant Prosecuting Attorney Brent Robinson asked the office investigator, Richard Duffey, to question Andre Martin in person.

{¶ 6} On October 22, 2009, appellant personally escorted "Andre Martin" to the Richland County Prosecutor's Office.

{¶ 7} In his statement to Duffey, "Andre Martin" stated that he saw the baggie in question fall out of someone's pocket during an altercation, that he picked it up thinking it was money, and that he walked for a while before he pulled it out of his pocket and realized that it was drugs. He stated that he then walked to the home of his friend, appellant, and asked to borrow appellant's car. He stated that he drove the car around but provided no details as to where he went or what he did. Finally, he claimed that he returned the car to appellant and forgot to take the baggie of drugs that he had placed in the sunglasses compartment for safekeeping. He advised Duffey that the amount of cocaine was not "a handful" that he did not really know how many bags there were, that he did not know how big it was, that he did not know how much it was, and that he did not know how much it weighed.

{¶ 8} Another investigator, Cindi Powers, thought that she recognized the man in the lobby, but could not put a name to the face. Powers checked photographs on the OHLEG database and established that the man was actually Willie Martin, not Andre Martin. Powers informed Duffey and Robinson of her findings. They agreed that the "Andre Martin" who had been in their office did not look like the real Andre Martin. It was later discovered that the person claiming to be Andre Martin was in fact Willie Martin, Andre Martin's brother.

{¶ 9} As a result of the above events, both appellant Nayyohn Johnson and Willie Martin were indicted by the Richland County Grand Jury.

{¶ 10} Appellant's indictment included the following charges:

{¶ 11} Count One: drug possession in violation of R.C. 2925.11(A);

{¶ 12} Count Two: obstruction of justice, in violation of R.C. 2921.32(A)(5);

{¶ 13} Count Three:  tampering with evidence, in violation of R.C. 2921.12(A)(2);

{¶ 14} Count Four:  tampering with evidence, in violation of R.C. 2921.12(A)(2),

{¶ 15} Count Five:  tampering with records, in violation of R.C. 2913.42(A)(1);

{¶ 16} Count Six:  identity fraud, in violation of R.C. 2913.49(B)(1).

{¶ 17} Appellant filed a motion to suppress evidence of the drugs. The trial court found that the drugs were revealed during a lawful inventory search of appellant's vehicle.

{¶ 18} Appellant's trial commenced on July 12, 2010, and continued on July 13, July 15, and July 16, 2010.

{¶ 19} At trial, the state of Ohio presented testimony from Sgt. Doug Noblet, Officer Nelson Kilgore, and Metrich Officer Perry Wheeler from the Mansfield Police Department, Anthony Tambasco of the Mansfield Forensic Science Laboratory, appellant's former defense counsel, attorney Dale Musilli, investigator Richard Duffey, investigator Lucinda Powers, Willie Martin, and Willie Martin's wife, Debbie Martin.

{¶ 20} At trial, in addition to hearing the testimony of the Mansfield police officers, investigators and forensic scientist, the jury heard testimony from appellant's former defense counsel, Dale Musilli, who testified that appellant had brought Willie Martin to his office, that Willie Martin presented himself as Andre Martin, and that Martin informed him that the cocaine found in appellant's car actually belonged to him.  He testified that based on Martin's statements to him, he had Martin prepare a written statement.  Musilli explained that he then had his assistant notarize the statement and then he faxed it to the prosecutor's office that day.

**{¶ 21}** The jury also heard from Willie Martin, who testified that he was not named or known as Andre Martin and that his "confession" had been false. He testified that he had made a deal with appellant to have appellant forgive a $1,200 debt he owed appellant, plus receive an additional $5,000, if he would tell the police that the drugs found in appellant's car were his. He explained that the reason he got the details about the drugs wrong was because he had never actually seen the drugs. He further testified that he was actually in Indianapolis, Indiana, at the time of appellant's traffic stop and that he had been there for months. Willie Martin's wife Debbie corroborated that he had been in Indianapolis.

**{¶ 22}** Appellant produced five witnesses to attempt to rebut Willie Martin's claim that he was in Indiana on the day of the car stop. All the defense witnesses were friends and family of appellant.

**{¶ 23}** At the conclusion of the state's case, the trial court dismissed the obstruction-of-justice count, finding that appellant could not legally be guilty of obstructing justice in scheming to cover up something that appellant himself had done.

**{¶ 24}** After hearing all the evidence and arguments, the jury found appellant guilty of one count of tampering with evidence, a felony of the third degree, one count of tampering with records, a felony of the third degree, and one count of identity fraud, a felony of the fifth degree.

**{¶ 25}** Citing appellant's extensive criminal history, which included seven prior felony convictions, the trial court sentenced appellant to two years on the tampering-with-evidence charge and one year concurrent on the counts of tampering with records and identity theft, for an aggregate sentence of three years in prison.

**{¶ 26}** Appellant now appeals to this court, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

**{¶ 27}** "I. Appellant's conviction for Counts III, V, and VI are contrary to the manifest weight and sufficiency of evidence presented at trial, thus denying appellant a fair trial and due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution and under Article 1, Section 16 of the Ohio Constitution.

**{¶ 28}** "II. Appellant's conviction and sentence for both Count III (tampering with evidence) and Count V (tampering with records) constitute Double Jeopardy as prohibited by the Fifth Amendment to the U.S. Constitution and Section 10 Article 1 of the Ohio Constitution.

**{¶ 29}** "III. Appellant was deprived of Due Process as guaranteed by the Ohio and U.S. Constitutions, as a result of ineffective assistance of counsel, or in the alternative, plain error."

**I**

**{¶ 30}** In his first assignment of error, appellant claims that his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

**{¶ 31}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a 13th juror and " 'in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins* (1997)*,* 78 Ohio St.3d 380,

387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 32} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 33} In the instant case, appellant was convicted of aiding or abetting another in tampering with evidence, aiding or abetting another in tampering with records, and identity fraud.

{¶ 34} The elements of tampering with evidence are set forth in R.C. 2921.12, which provides:

{¶ 35} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

{¶ 36} "* * *

{¶ 37} "(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation."

{¶ 38} The elements of tampering with records are set forth in R.C. 2913.42(A)(1), which provides:

**{¶ 39}** "(A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:

**{¶ 40}** "(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record."

**{¶ 41}** The elements of identity fraud are set forth in R.C. 2913.49(B)(1), which provides:

**{¶ 42}** "(A) As used in this section, "personal identifying information" includes, but is not limited to, the following: the name, address, telephone number, driver's license, driver's license number, commercial driver's license, commercial driver's license number, state identification card, state identification card number, social security card, social security number, birth certificate, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, money market account number, mutual fund account number, other financial account number, personal identification number, password, or credit card number of a living or dead individual.

**{¶ 43}** "(B) No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following:

**{¶ 44}** "(1) Hold the person out to be the other person."

**{¶ 45}** Based on the testimony of Musilli and Willie Martin, as set forth in detail above in the recitation of the facts, the jury in this case could have reasonably

concluded that appellant aided and/or abetted Willie Martin in committing the crimes of tampering with evidence, tampering with records, and identity fraud.

{¶ 46} Martin's testimony alone regarding the use of his brother's identity, the preparation of the false written statement, and the false information given to the investigators presented the jury with sufficient evidence to find that appellant had committed the crimes.

{¶ 47} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes of tampering with evidence, tampering with records, and identity fraud. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support appellant's convictions.

{¶ 48} "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)." *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267, 140 L.Ed.2d 413.

{¶ 49} Appellant cross-examined the state's witness and further put on his own witnesses in an attempt to rebut the state's case.

{¶ 50} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180.

{¶ 51} The jury was free to accept or reject any and all of the evidence offered by appellant and the state and assess the witness's credibility. " 'While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP739, quoting *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236. Indeed, the jurors need not believe all of a witness's testimony, but may instead accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 1, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548; *State v. Burke,* Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 52} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶ 53} We conclude that the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice requiring a new trial.

**{¶ 54}** Based on the foregoing, appellant's first assignment of error is not well taken, and is hereby overruled.

## II

**{¶ 55}** In his second assignment of error, appellant argues that tampering with evidence and tampering with records are allied offenses of similar import and that his convictions on both constitutes double jeopardy. We disagree.

**{¶ 56}** R.C. 2941.25 defines allied offenses of similar import as follows:

**{¶ 57}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶ 58}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶ 59}** Recently, the Ohio Supreme Court addressed the issue raised herein in *State v. Johnson,* 2010–Ohio–6314, holding as follows:

**{¶ 60}** "Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

**{¶ 61}** "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and*

commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship,* 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ('It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses.' [Emphasis sic] ). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶ 62} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' *Brown,* 119 Ohio St.3d 447, 2008–Ohio–4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

{¶ 63} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶ 64} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge."

{¶ 65} Based upon the test set forth in *Johnson,* we do not find tampering with evidence and tampering with records to be allied offenses of similar import. We find that while both offenses could be committed simultaneously, in this case, there was a separate animus for each distinct act committed: the act of informing Musilli that he had

found the person who claimed to be the owner of the drugs and escorting that person to Musilli's office to have him prepare a false statement that was then sent to the prosecutor's office; and then later escorting Willie Martin to the prosecutor's office to continue the charade and commit another crime by making a false, taped statement, all the while knowing that Willie Martin was not Andre Martin nor was he the owner of the drugs.

{¶ 66} Based on the foregoing, we find that the evidence supports a finding that the counts of tampering with evidence and tampering with records were committed as two separate acts, and the court did not err in sentencing appellant to consecutive sentences. We therefore find that appellant's double-jeopardy rights were not violated.

{¶ 67} Based on the foregoing, appellant's second assignment of error is not well taken, and we hereby overrule it.

### III

{¶ 68} In his third assignment of error, appellant claims that he was denied the effective assistance of counsel. We disagree.

{¶ 69} A claim of ineffective assistance of counsel requires a two-pronged analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838, 122 L .Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶ 70}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley,* 42 Ohio St.3d at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

**{¶ 71}** In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 694, 104 S.Ct. 2052. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.; *Bradley* at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*; *Bradley*.

**{¶ 72}** Appellant asserts trial counsel was ineffective for failing to raise a double-jeopardy argument with regard to Counts III and IV and that the failure amounts to plain error.

**{¶ 73}** Having found appellant's double-jeopardy argument to be without merit, we do not find that appellant's defense counsel's performance was deficient for failing to raise it.

**{¶ 74}** Appellant's third assignment of error is denied.

**{¶ 75}** For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed.

Judgment affirmed.

GWIN, and EDWARDS, JJ., concur.